## Richmond.

## C. C. FENTRESS v. E. B. RUTLEDGE AND ROYAL INDEMNITY COMPANY, GARNISHEE.

### December 18, 1924.

1. GARNISHMENT—*Suggestion of Liability under an Execution—Liability of Garnishee—Jury—Disclosure.*—In proceedings by garnishment under an execution, when the claim is that there is a debt due by the garnishee to the judgment debtor, the object is to acertain whether there is or was such a debt, and its amount, at a time which created a liability on the garnishee, by reason of the execution having become a lien on the money so due.   If the plaintiff suggests that the garnishee has not fully disclosed his liability, the court, without any formal pleading, should enquire into the liability of the garnishee.   The issue then is as to the liability of the garnishee for a debt to the judgment debtor, upon the trial of which the original plaintiff has the affirmative, and the garnishee the negative, and on demand of either party the court should impanel a jury to determine the issue and the amount of the indebtedness, if any.   Code of Virginia, sections 6501, 6509, 6511.

2. GARNISHMENT—*Suggestion of Liability under an Execution—Liability of Garnishee—Nature of the Debt.*—In order to hold the garnishee liable, it must be shown that the legal obligation for the debt is absolute, and not contingent or dependent upon an unperformed condition; if the debt has a present existence, although payable in the future, it is still subject to the execution lien.

3. GARNISHMENT—*Suggestion of Liability under an Execution—Liability of Garnishee—Indemnity Company Garnisheed by Injured Party—Case at Bar.*—In the instant case plaintiff had recovered a judgment for damages against the owner of an automobile.  Upon a suggestion of liability under an execution issued on the judgment garnishment process was served against the indemnity company in which the owner was insured.  The policy designated as the "Automobile Public Liability Policy" differed from the policy in the case of *Combs* v. *Hunt, ante* p. 627, in that it did not contain the "no action" clause and under the terms of the policy the indemnity company was to indemnify the assured against liability arising out of the claim for damages against him, and not merely to indemnify him against loss actually sustained and paid by him.  Therefore there was a present liability of the company to the assured which was subject to the garnishment process.

4. GARNISHMENT—*Suggestion of Liability under an Execution—Liability of Garnishee—"Automobile Public Liability Policy."*—An indemnity company in the contracting clause of a policy in consideration of the premium, agreed with the insured that if any person should sustain bodily injury by reason of the ownership or use of insured's automobile for which injuries the insured is liable for damages, then the company would indemnify the insured "against loss arising out of such liability." It is well settled that under such an agreement, the cause of action against the company is complete when the liability for such loss attaches, and the amount due under the policy is to be fixed by a settlement with the injured person, made with the consent of the company, or by a judgment against the insured. The policy secures the assured "liability" insurance as distinguished in many of the authorities from "indemnity" or "loss" insurance.

5. INDEMNITY INSURANCE—*Notice of Process—Waiver by Company.*—An indemnity policy required assured to forward to the company all process, pleadings, etc., relating to any claim against him. It also provided that the company would defend claims against assured. The company denied liability on the ground that assured had not forwarded process, etc., to it. Before any suit brought the company allowed the general defense of the assured against a claim for injury to be placed in its hands. The company learned of the pending action and knew that it had not received process and should then have denied liability but it held back from its duty to defend without assigning any reason for so doing.

   *Held:* That the company could not under the circumstances of the case, after the judgment, rely upon the failure of the insured to deliver it the process or pleading in the case. There was a clear waiver of the right to do so.

Error to a judgment of the Circuit Court of Norfolk county, in a proceeding by garnishment. Judgment for garnishee. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*Rixey & Rixey*, for the plaintiff in error.

*James H. Willock*, for the defendants in error.

CRUMP, P., delivered the opinion of the court.

C. C. Fentress, the plaintiff in error, recovered a judgment against E. B. Rutledge in the Circuit Court of Norfolk county for the sum of $3,000.00, in an action arising upon a claim for damages for personal injuries suffered by the plaintiff by reason of his having been struck by the automobile of the defendant, Rutledge. Upon a suggestion of liability under an execution issued on this judgment, garnishment process was served upon the Royal Indemnity Company. The indemnity company, in its answer to the summons, denied that there was any liability upon it, and neither party demanding a jury, the court proceeded to hear and determine the whole matter of law and fact as to the liability of the garnishee, and after hearing the evidence, being of the opinion that the Royal Indemnity Company was not indebted to E. B. Rutledge in any sum, entered judgment in this proceeding for the garnishee; whereupon the plaintiff applied for and obtained a writ of error.

The evidence before the trial court shows that at the time the plaintiff was injured by the automobile of Rutledge the latter held an indemnity or casualty policy in the Royal Indemnity Company, whereby the company agreed to indemnify the assured in the event the assured was liable for damages to any person for bodily injuries caused by the use of assured's automobile.

[1] In proceedings by garnishment under an execution, when the claim is that there is a debt due by the garnishee to the judgment debtor, the object is to ascertain whether there is or was such a debt, and its amount, at a time which created a liability on the garnishee, by reason of the execution having become a lien on the money so due. If the plaintiff suggests that the garnishee has not fully disclosed his liability, the court, without any formal pleading, should enquire into the liability of the garnishee. The issue then is as to the

liability of the garnishee for a debt to the judgment debtor, upon the trial of which the original plaintiff has the affirmative, and the garnishee the negative, and on demand of either party the court should impanel a jury to determine the issue and the amount of the indebtedness, if any. Code of Virginia, sections 6501, 6509, 6511.

[2] In order to hold the garnishee liable, it must be shown that the legal obligation for the debt is absolute, and not contingent or dependent upon unperformed condition; if the debt has a present existence, although payable in the future, it is still subject to the execution lien. *Boisseau* v. *Bass' Adm'r*, 100 Va. 207, 40 S. E. 647, 57 L. R. A. 380, 93 Am. St. Rep. 956; *Freitas* v. *Griffith*, 112 Va. 343, 71 S. E. 531.

[3, 4] The question for solution in this case is, was there an existing liability on the garnishee company to Rutledge under the indemnity policy, so that the relation of debtor and creditor existed between the company and Rutledge, and the claim for indemnity was then enforceable at the action of Rutledge. If this was the status at the time the garnishee summons was served, then the garnishee became liable in this proceeding.

The policy contract in this case is very dissimilar from that construed by this court in the case of *Combs* v. *Hunt, ante* p. 627, 125 S. E. 661, in an opinion rendered at the present session, especially in that it does not contain the "no action" clause, the effect of which was largely the subject dealt with in the case of *Combs* v. *Hunt*.

The policy on its face is designated "automobile public liability policy." The company in the contracting clause, in consideration of the premium, agrees with the insured that if any person shall sustain bodily injury by reason of the ownership or use of insured's automobile

for which injuries the insured is liable for damages, then the company will indemnify the insured "against loss arising out of such liability." It is well settled that under such an agreement, the cause of action against the company is complete when the liability for such loss attaches, and the amount due under the policy is to be fixed by a settlement with the injured person, made with the consent of the company, or by a judgment against the insured.

The distinction between policies of this character and those containing the no action clause is pointed out in 1 Joyce on Ins. (2nd ed.), page 138, as follows:

"If a clause in a policy undertakes to indemnify assured against loss by reason of liability on account of injuries to employees, and the insurer agrees to defend proceedings against assured, or settle the same, unless it elects to pay the provided indemnity to assured, it does not make the contract one guaranteeing payment of an obligation of insured, rather than one of indemnity, where another clause provides that no action shall be brought against the insurer unless by the insured himself to reimburse him for loss actually sustained and paid, the former clause being merely an additional privilege for insured's protection. Where the insurer expressly binds himself to pay all damages with which insured may be legally charged or required to pay, or for which he may become legally liable, it is not only a contract of indemnity, but also a contract to pay liabilities, and a recovery may be had thereon as soon as the liability attaches to insured and before it is discharged. The measure of damages is the accrued liability."

In *Stephens* v. *Penn. Casualty Co.*, 135 Mich. 189, 97 N. W. 686, 3 Ann. Cas. 478, it was held that under indemnity contracts against liability for casualties, in which payment by the assured is not made essential, when a final judgment is rendered against the assured,

the liability of the insurer or indemnitor becomes fixed, and it is obligated to pay the amount of the indemnity although the judgment had not been paid by the indemnitee.    See also *Fenton* v. *Poston,* 114 Wash. 217, 195 Pac. 31; *Blanton* v. *Cotton Mills,* 103 Kan. 118, 172 Pac. 987, L. R. A. 1918-E, 541.

The insurance or indemnity contract in the instant case is clearly an agreement to indemnify the assured against liability arising out of the claim for damages against him, and not merely an agreement to indemnify him against loss actually sustained and paid by him. The policy secures to the plaintiff "liability" insurance as distinguished in many of the authorities from "indemnity" or "loss" insurance.    Upon rendition of the judgment in this case, the amount of the company's liability to Rutledge became fixed; and it became indebted to Rutledge for the amount of the judgment, interest and costs, unless it otherwise had a good defense.

[5] Does the evidence before the trial court show a defense on the part of the garnishee company sufficient to relieve it from the payment of the judgment?

Immediately following the provisions of the policy as to the insurance effected, the substance of which has been stated above, the following stipulations on the part of the company occur:

"And will in addition, in the name and on behalf of the insured    *    *    *    *

"1. Defend all claims or suit for damages for such injuries, for which they are, or are alleged to be, liable.

"2. (a) Pay all costs and expenses incurred with the company's written consent.    (b) Pay all taxed costs. (c) Indemnify all interest accruing upon any judgment."

Under the caption of conditions, which are stated to

be conditions precedent to a right of recovery, it is provided in the policy that:

"3. Upon the occurrence of any accident covered by this policy, the insured shall give immediate written notice thereof to the company, and forward to the company forthwith after receipt thereof every process, pleading and paper of any kind relating to any and all claims, suits and proceedings."

Another condition forbids the insured to make any settlement of a claim against him without the written consent of the company.

It is insisted by the learned counsel for the Royal Indemnity Company, that the insured failed to forward to the company the process and pleading in the action for damages against him by Fentress, which was instituted by notice of motion for judgment, and therefore he violated the condition in that regard and forfeited his right to recover the amount of the judgment.

The evidence discloses that the day after the accident (February 21, 1922), Rutledge called upon the agents in Norfolk from whom he had bought the policy, and reported the accident to them, and they referred him to the attorney for the company in Norfolk. On the following morning he and his wife went to see the company's attorney, and gave him the full details of the occurrence. The company's attorney called upon the injured man at the hospital, and otherwise investigated the accident. Fentress employed counsel to prosecute his claim for damages against Rutledge, and several letters passed between the claimant's attorneys and the company's attorney in reference to the matter; the evidence, however, does not disclose the substance of these communications. The notice of motion for judgment, to be made on behalf of Fentress on the 5th day of June, 1922, was served on Rutledge on the 27th day of March,

1922, by posting a copy of the notice at the front door of his residence, and proper return made thereof as provided by the statute.    Under the Virginia practice this substituted service was equivalent to personal service. Rutledge, however, testified that he never received the notice, and did not have any knowledge of the motion until after its return day; and this is not refuted.   When the motion was called in court on June 5th, which fell on Monday, no one answered for the defendant, and the case was fixed for trial on the following Monday, June 12th.    On June 5th, after the case had been fixed for trial, the attorney for Fentress called up the company's attorney over the telephone and informed him of the day the court had set the case for trial; whereupon the company's attorney suggested a continuance to which the attorney for Fentress replied that he had put the case as late in the term as the judge would set it because of certain annexation proceedings in his court.    On the next day, June 6th, the company's attorney wrote Rutledge the following letter:

"My Dear Mr. Rutledge:
    "I have just learned that Fentress has brought suit against you, and this case is set for trial on Monday. Please get in touch with me as soon as you receive this letter.    Call me up by telephone or come to see me. It is urgent that I see you without delay.
                    "Yours very truly."

This letter was received by Rutledge but he did not see the company's counsel, nor call upon him.    Rutledge appears to be rather an ignorant man; he gives no explanation for failing to communicate with the company's attorney, but seems to have left the whole matter to the company.    The company's attorney testified

that if he suggested a continuance, this was not done as attorney for the Royal Indemnity Company, as he had no notice of a suit, but he wanted to give Mr. Rutledge an opportunity to take care of the suit himself, and hence he wrote the letter, but in doing that he was not acting for the Royal Indemnity Company. The company was a foreign corporation, and it is manifest that the closing up of a loss under this policy, requiring probably the necessary defense of a damage suit in court, was not a matter to be handled by the insurance agents or brokers through whom the policy was issued, and hence they had naturally referred it to the regular counsel for the company. In all these dealings concerning the loss or liability of the policy of this foreign indemnity corporation, the learned counsel who was acting for it must be taken as its representative. In fact the learned gentleman who was the attorney for the company subsequently testified that he represented the company "all the way through," but not Mr. Rutledge. When the damage suit against Rutledge was called for trial on June 12th no one appeared for the defense, and a jury, which was sworn in the case, having heard the evidence returned the verdict for $3,000.00 in favor of Fentress, upon which judgment was rendered, and execution was issued July 3rd, under which the garnishment summons was sued out on July 7th and served on the garnishee company on the following day, July 8th. The execution was subsequently returned "no effects." There is no evidence tending to support an inference that, during the period from the time of the accident in February to the date the judgment was rendered, the company took the position that it was not liable under the policy. The attorney for the company evidently informed himself of the particulars of the accident, but he is not shown to have complained of any breach of con-

dition on the part of Rutledge, nor to have informed either Rutledge or the attorney for Fentress that the company disclaimed liability and would not regard itself as concerned in the matter.    Under an indemnity or liability policy of this character the legal relations of the contracting parties are materially different from those which they occupy toward each other in an ordinary fire or life insurance policy.    The insuring company is necessarily interested in the result of an action for damages against the assured, as a favorable result in the action may relieve it altogether of payment under the policy.    Hence it protects itself by the clause relative to the defense of the action, so as to insure a capable and vigorous defense.    But when, in accomplishing this purpose, it binds itself, as is done in the instant case, to defend the action, the right or election to do so becomes an obligation which the insured can enforce, or for a breach of which he can hold the company liable.

In reply to the indemnity company's contention that it was not bound by the policy to pay the judgment, because the insured had violated the condition requiring him to "forward to the company forthwith after receipt thereof every process, pleading and papers of any kind relating to any and all claims, suits and proceedings," the counsel for plaintiff makes a two fold argument.    It is insisted by him, (1) that there was no process or pleading except the notice of motion, and that this, although posted, never was received by or came to the hands of Rutledge, and therefore the condition did not apply; (2) that the company waived its right to insist upon a failure to comply with this condition.

Taking up first for consideration the question of waiver thus presented, the court is of opinion that the position assumed by the plaintiff in error is well taken.

Under a policy of this character, the accident to the third person initiates a claim under the policy.   The insured and the insurer became then, under the terms of the policy, engaged in the settlement of a contemplated actual loss.   The liability for the loss attached to the company before the judgment was rendered.   The judgment in the action for damages does not, as between the insured and insurer, fasten the liability upon the company; that liability already existed because there was an alleged and asserted claim against the insured.

In this case the company allowed the general defense of the assured against the claim of the injured man to be placed in its hands before any suit was brought, and before it was known whether any suit would be brought; and it undertook to protect the insured by dealing with the counsel for the injured man, although it was at the same time properly seeking to avoid ultimate loss to itself.   Under the circumstances disclosed by the rather meagre evidence, when the company by its attorney learned of the pending action, and necessarily knew of the fact that it had not received any process or pleading relative to it from the insured, it should promptly have denied liability, or in communicating with the insured should have reserved its right to deny ultimate liability. If the company had taken active charge of the defense, appeared at the time of trial and sought to defeat a recovery, without reserving any right to deny its ultimate liability, it would surely have been held to have waived its right to rely upon a breach of the condition relative to the initiatory proceedings in the action.   When it held back from complying with its obligation to defend, without assigning any reason for such a course, there is equally as good ground for holding that it waived the right, which it had failed to insist upon.   The letter written by the learned attorney for the company to

Rutledge a week before the trial of the action for damages contains not the least suggestion that he will change the course he had been pursuing and will take no further part in the defense of the claim or suit against him. On the contrary it rather conveys the impression that the writer is looking after the case which he states has been set for trial. For the company to have then altogether refrained from further participation in any effort to defeat the claim of the injured man, or to minimize the recovery in the suit, rested upon a misconception of the relative duties of the parties. It was not in a position to refrain from defending the suit merely upon the ground that the insured had not required nor requested it to do so. Instead of electing to rely upon the alleged breach of condition, and so writing the insured, it communicated with the insured apparently for the purpose of preparing for trial of the case, and with no allusion to any breach of condition.

We are of opinion that the company could not under the circumstances of this case, after the judgment, rely upon the failure of the insured to deliver it the process or pleading in the case. There was a clear waiver of the right to do so. Independent of the technical doctrine of estoppel, the company could make this waiver by failing to insist upon its right at the proper time. *Va. Fire & Marine Ins. Co.* v. *Richmond Mica Co.*, 102 Va. 429, 46 S. E. 463, 102 Am. St. Rep. 846; *Eichelbaum* v. *Klaff*, 125 Va. 98, 99 S. E. 721; *Lee* v. *Casualty Co.*, 90 Conn. 202, 96 A. 952; *Miller* v. *Union Indemnity Co.*, 209 App. Div. 455, 204 N. Y. S. 730.

It is therefore unnecessary to consider the effect of the failure of Rutledge to actually receive the process, which was served upon him by substituted service.

We are further of opinion the contention of the indemnity company that there was a misrepresentation by

Rutledge as to his occupation is not sufficiently borne out by the testimony.

The amount for which the indemnity company could be made liable under its policy was $5,000.00, which is amply sufficient to cover the judgment, interest and costs in the action against Rutledge.

Upon the whole record the conclusion of the court is that Rutledge was entitled to force the indemnity company to pay the judgment against him, and that right can be enforced by the plaintiff in the garnishment proceedings.    Hence the judgment of the circuit court will be reversed, with costs to the plaintiff in error, and since the amount for which Rutledge was insured under the indemnity policy exceeds the amount of the judgment against Rutledge, this court will render judgment in favor of C. C. Fentress against the Royal Indemnity Company for the sum of $3,000.00 with interest from the 13th day of June, 1922, until paid, and the taxed costs in the judgment rendered on that day against E. B. Rutledge.

*Reversed.*