133 S.E.2d 277 (1963)
204 Va. 783
VIRGINIA MUTUAL INSURANCE COMPANY
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY et al.
Supreme Court of Appeals of Virginia.
December 2, 1963.
*278 Robert E. Taylor, Charlottesville (M. Wallace Moncure, Jr., Richmond; Taylor, Camblos & Michie; Charlottesville; Moncure & Cabell, Richmond, on brief), for plaintiff in error.
C. Armonde Paxson, Charlottesville (Paxson, Marshall & Smith, Charlottesville, on brief), for defendants in error.
Before EGGLESTON, C. J., and SPRATLEY, BUCHANAN, WHITTLE, SNEAD, I'ANSON and CARRICO, JJ.
CARRICO, Justice.
On August 7, 1962, Virginia Mutual Insurance Company filed a motion for declaratory judgment against State Farm Mutual Automobile Insurance Company, Harry A. Austin, Dorothy W. Austin, Gerald F. Kestner and Anna Kate Kestner.
The controversy arose out of an automobile accident in which the Austins were injured when their vehicle was in collision with one being operated by Anna Kestner. Following the accident, the Austins instituted actions for their injuries against the Kestners.
The motion for declaratory judgment, filed by Virginia Mutual, alleged that State Farm had issued a policy to the Kestners insuring them against liability and obligating State Farm to defend the actions brought by the Austins. However, the motion stated, State Farm had denied coverage under its policy and had refused to defend the actions. It was further alleged that Virginia Mutual had issued a policy to the Austins containing an uninsured motorist endorsement and that the Austins had asserted in their actions against the Kestners that if the State Farm policy did not cover the accident, then Virginia Mutual was liable to the Austins under their uninsured motorist coverage.
The motion sought a declaration as to whether the State Farm policy was in force and effect at the time of the accident or whether Virginia Mutual was liable to the Austins under the uninsured motorist endorsement.
State Farm filed its grounds of defense, alleging that its policy, issued to the Kestners, had been declared void ab initio because of "false and fraudulent statements" made by Gerald F. Kestner in the application for insurance.
The trial court heard the evidence and took the matter under advisement. Thereafter, an "order of judgment" was entered which merely ordered that, "judgment be awarded in favor of State Farm Mutual Automobile Insurance Company." We granted Virginia Mutual a writ of error.
The evidence, which is without serious conflict, shows that the Kestners were first insured by State Farm under a policy, covering a 1955 model automobile, which was effective from March 28, 1960, and which expired. In the latter part of October, 1961, the Kestners purchased another vehicle, a 1956 model Chevrolet, and Mrs. Kestner telephoned E. C. Mundy, State Farm's agent in Orange, advising him that insurance coverage was desired on the newly acquired vehicle. On November 2, Mr. Kestner alone visited the agent's office and an application was filled in by Mundy and signed by Kestner.
Question No. 19 on the application was:
"Has license to drive or registration been suspended, revoked or refused for the applicant or any member of his household within the past five years?"
The square marked "No" was checked by Mundy in response to Kestner's statement to him. However, Mrs. Kestner had, in fact, been refused the issuance of an operator's license on at least two occasions.
On November 12, State Farm issued the policy to the Kestners which is in dispute here. The policy, effective from November 2, 1961, to May 2, 1962, in addition to *279 providing liability coverage, also granted uninsured motorist, medical payments and death benefits coverage.
On December 10, 1961, Mrs. Kestner was involved in the collision with the Austins which gave rise to the present controversy. On December 11, Mr. Kestner reported the accident to Mundy. On the same date, the latter prepared and forwarded to State Farm a report of the accident and filed with the Division of Motor Vehicles an SR-21 form advising the Division that State Farm's policy was "in effect" at the time of the accident and applied to Mr. and Mrs. Kestner.
On December 13, a claims representative of State Farm interviewed Mrs. Kestner as she was being discharged from the University of Virginia Hospital. He took from her a detailed written statement concerning the accident and also had her sign a "non-waiver agreement."
We are not advised of the contents of the "non-waiver agreement", since it was not introduced into evidence. However, Mrs. Kestner's statement is an exhibit. In it she set forth the details of the accident, including the fact that one of the tires on her vehicle "blew out" just before her collision with the Austin vehicle. She also stated that she had never had an operator's license, although she had been driving for five years. She said she had tried several times, unsuccessfully, to pass the license examination.
Following the taking of Mrs. Kestner's statement, the claims representative of State Farm conducted a full investigation of the accident. He also discussed the accident with Virginia Mutual's attorney but never notified the latter that State Farm was denying coverage.
On December 28, State Farm received a request from the Kestners to change the address on their policy. This request was honored by State Farm.
On January 11, 1962, State Farm received a bill from the University hospital for Mrs. Kestner's care and treatment, which related to the medical payments coverage of the Kestner policy. Payment of this bill was not denied until March 9, 1962.
In January, the Kestners purchased another vehicle, a 1956 Pontiac, and contacted Mundy to have their insurance transferred to the newly acquired automobile. The agent forwarded to State Farm a transfer application, signed only by him, setting forth the names of the policyholders and information concerning the new vehicle.
On February 7, a representative of State Farm secured a further written statement from Mrs. Kestner and also a written statement from her husband. In her statement, the question of Mrs. Kestner's having been refused an operator's license was not mentioned. In his statement, Mr. Kestner said that he "was aware" when he signed the application that his wife did not have an operator's license and that, "she had tried to get a permit on several occasions."
On February 12, State Farm issued to the Kestners a new policy, effective from February 12, 1962, to May 2, 1962, covering the Pontiac acquired in January.
On March 9, State Farm notified the Kestners that the policies which had been issued to them were rescinded as of the dates of issuance and should be treated as void from inception. The policies listed included the new policy issued in February, 1962, the one in dispute here issued in November, 1961, and the one issued in March, 1960. The reason given for the rescissions was the "misrepresentations", in the applications for the March, 1960, and November, 1961, policies, with respect to Mrs. Kestner's having been refused an operator's license. The notice stated that a draft in the sum of $85.14, for return premiums, was enclosed, but it was not received by the Kestners. Another draft was sent them on April 17, but they had not cashed it at the time of the trial.
When Mr. Kestner applied for license plates in April, he listed State Farm's policy *280 on the application which he sent to the Division of Motor Vehicles. He did this, he testified, notwithstanding the fact that he had been notified that his insurance had been rescinded, because he did not consider his policy void, "until the premium was refunded."
The Division of Motor Vehicles forwarded to State Farm a form for verification of Kestner's insurance coverage relating to his application for license plates. State Farm returned the form with the notation "No record of policy", and on May 25 sent a letter to the Division stating that the policies of November 2, 1961, and February 12, 1962, "were rescinded as of date of issuance * * * because of material misrepresentation." State Farm did not communicate with the Division concerning the SR-21 form it had filed on behalf of the Kestners.
The underwriting superintendent of State Farm testified that if question No. 19 on the application form had been answered "Yes", the policy would not have been issued.
The contentions of Virginia Mutual which are pertinent to the disposition of this case are:
1. That the statements made by Mr. Kestner, relating to the status of his wife's right to drive, were not material to the risk assumed by State Farm.
2. That the actions of State Farm constituted a waiver of the policy defense.
State Farm, on the other hand, contends that the materiality of Kestner's statements was properly shown and that the evidence was insufficient to show that it had waived its right to rescind the policy of November 2, 1961.
These contentions will be discussed together because they are concerned in the basic and controlling question to be decided: Was State Farm entitled to rescind its policy of November 2, 1961?
Code, § 38.1-336 provides as follows:
"All statements, declarations and descriptions in any application for a policy of insurance or for the reinstatement thereof shall be deemed representations and not warranties, and no statement in such application or in any affidavit made before or after loss under the policy shall bar a recovery upon a policy of insurance, or be construed as a warranty, anything in the policy to the contrary notwithstanding, unless it be clearly proved that such answer or statement was material to the risk when assumed and was untrue."
In Green v. Southwestern Vol. Ass'n, 179 Va. 779, 787, 20 S.E.2d 694, 697, Mr. Justice Spratley, speaking for the court said:
"We have construed this section [§ 38.-1-336] to provide that no such statement, declaration, or description shall be allowed to bar a recovery upon the policy, or be construed as a warranty, unless it be `clearly proved' that it was both false and material to the risk. * * *"
In State Farm Mutual Auto. Ins. Co. v. Butler, Adm'r, 203 Va. 575, 578, 125 S.E. 2d 823, 825, the court, speaking through Mr. Chief Justice Eggleston, said:
"In applying this statute [§ 38.1-336] we have repeatedly said that misrepresentations of facts material to the risk assumed in an application for insurance render the contract void. * * *"
"* * * [W]hether a representation has been made and the terms on which it was made are questions of fact for the jury; but when proved its materiality is a question for the court. * * *" Scott v. State Farm Mutual Auto. Ins. Co., 202 Va. 579, 583, 118 S.E.2d 519, 524.
And in Sands v. Bankers' Fire Ins. Co., 168 Va. 645, 653, 192 S.E. 617, we held that the insurance company has the burden of proving the materiality of a misrepresentation, it being an affirmative defense.
*281 Virginia Mutual concedes that the statements of Kestner, in his insurance application, were untrue. The crucial inquiry, therefore, is whether the statements were "clearly proved" by State Farm as material to the risk assumed.
"A fair test of the materiality of a fact is found in the answer to the question, whether reasonably careful and intelligent men would have regarded the fact communicated at the time of effecting the insurance as substantially increasing the chances of the loss insured against, so as to bring about a rejection of the risk or charging an increased premium." Flannagan v. Northwestern Mutual Life Ins. Co., 152 Va. 38, 67, 146 S.E. 353, 361. [Emphasis added].
It is true that the representatives of State Farm testified, in court, that the policy of November 2, 1961, would not have been issued if it had been known that Mrs. Kestner had been refused an operator's license. But this testimony is negated by the uncontradicted evidence of State Farm's actions before it was brought into court. Those actions show conclusively that State Farm did not regard the statements as material. It cannot ask now that they be so regarded, or contend that their materiality was "clearly proved."
When Mr. Kestner reported the accident to the agent Mundy, he delivered to the latter a police report showing that Mrs. Kestner did not have an operator's license. Presumably, Mundy included that information in the accident report which he forwarded to his company. In any event, on the same date, Mundy filed the SR-21 form with the Division of Motor Vehicles, stating that State Farm's policy was "in effect" at the time of the accident.
Only two days later, State Farm's investigator learned from Mrs. Kestner that she did not have, and that she had been refused the issuance of, an operator's license. Later, sixty days after the accident, State Farm learned from Mr. Kestner that when he signed the application he knew the full situation concerning the status of his wife's right to drive. Notwithstanding that State Farm then had all the information which it now says entitled it to rescind its policies, it failed to withdraw the SR-21 form, although the administrative rules of the Division would have permitted such withdrawal up to ninety days following the accident.
In Virginia Farm Bureau Mutual Insurance Company v. Saccio, 204 Va. 769, 133 S.E.2d 268, this day decided, we discussed the purposes to be served by, and the effect of, the filing of an SR-21 form. We there held that the filing of the form, standing alone and as a matter of law, did not have the effect of estopping the insurance company from relying on the defense of fraud in the procurement of the policy. But the filing of the SR-21 form and the failure timely to withdraw it, under the particular circumstances of the case now before us, are factors to be given weight in determining whether State Farm is entitled to deny coverage under its policy. Maryland Cas. Co. v. Aetna, etc., Co., 191 Va. 225, 234, 60 S.E.2d 876.
There are other factors to be considered. State Farm conducted a full investigation of the accident after it knew of a probable policy defense. True, it first secured a non-waiver agreement from Mrs. Kestner, but we can give that no effect since its contents were not revealed to the trial court nor are they disclosed in the record before us.
State Farm's representative discussed the accident with the attorney for Virginia Mutual without giving any indication that State Farm intended to deny coverage. State Farm withheld from Virginia Mutual the whereabouts of the alleged "blownout tire", causing Virginia Mutual to threaten to bring discovery proceedings to force disclosure of information relating thereto. The pleadings in the present case indicate that such information was still being withheld at the time this action was filed.
*282 After State Farm knew that it probably had a policy defense, it endorsed its policy at the request of the Kestners, showing their new address on the policy.
State Farm held the statement of the University hospital, covering the cost of Mrs. Kestner's care, for a period of almost two months before advising either the hospital or the Kestners that it was not, or probably would not be, liable for the charges.
But the most illuminating, and in view of its present position the most surprising, of all of State Farm's actions took place on February 12, 1962. It then issued the Kestners a new policy, granting them coverage on the automobile recently purchased by them.
State Farm's representatives attempted, in their testimony, to show that the policy of February 12 was merely a transfer of the coverage, from one vehicle to the other, of the November 2 policy. The same witnesses, however, termed the policy a "new policy." One of the witnesses stated that there was, "no refund and no additional premium charged" for the new policy but the policy itself shows that it was issued for a premium of $9.65. Part of that figure was a premium for uninsured motorist coverage, the charge for which was greater on the new policy than the charge for the same coverage on the old policy. In addition, one of the representatives for State Farm testified that a $2.00 membership fee was charged for death benefits coverage on both the November and February policies.
The application filled in by Mundy and forwarded to State Farm in February states that the new policy "replaces" the November policy. The February 12 policy bears a new number. It is effective from a new date, it covers a different vehicle and it contains no reference to the November policy. It is, in all respects, a separate and distinct document.
When State Farm issued the policy of February 12, more than sixty days after the accident, it had full knowledge of all the facts upon which it later relied for rescission. If those facts were not regarded by State Farm, on February 12, to be sufficiently material to justify its refusing to issue the new policy they could not, by March 9, have ripened into a maturity sufficient to support the rescission action of the latter date.
Instead of electing, on February 12, to rely on the materiality of Kestner's statements and then and there rescind the November policy and refuse to issue a new policy, State Farm chose instead to issue the new policy, retaining the fruits of the premiums collected from the Kestners.
In so doing, State Farm said in plain language that it did not regard the disputed statements as material; it recognized the validity of the November 2, 1961, policy, and it lulled the Kestners into the belief that they were, and had been since November 2, insurable and insured. By this and its previous actions, State Farm waived its right to rely on the materiality of the untrue statements as a ground for rescission. Virginia Auto Mut. Ins. Co. v. Brillhart, 187 Va. 336, 349, 350, 46 S.E.2d 377; Royal Indemnity Co. v. Hook, 155 Va. 956, 965, 157 S.E. 414; Fentress v. Rutledge, 140 Va. 685, 696, 125 S.E. 668; Merchants Indemnity Corp. of New York v. Eggleston, 68 N.J.Super. 235, 172 A.2d 206, 217, 218; 29A Am.Jur., Insurance, § 1048, pp. 218, 219; 45 C.J.S. Insurance § 710, p. 679; 16 Appleman, Insurance Law and Practice, § 9254, p. 811, et seq.
State Farm cannot expect the court to make out a better case for it than it has made for itself. Although its witnesses, in court, may have technically satisfied the test of materiality as laid down in our cases, the other testimony as to its course of conduct before it reached court shows, as a matter of law, that State Farm was not entitled to rescind the policy of November 2, 1961.
Accordingly, the judgment of the trial court will be reversed and a final order *283 will be entered here declaring, pursuant to the prayer of the motion for declaratory judgment, that State Farm's policy of November 2, 1961, issued to Gerald F. Kestner and Anna Kate Kestner, "was in force and effect at the time of the accident and covers the named insureds."
Reversed and final judgment.