INSURANCE COMPANY OF NORTH AMERICA, Appellant,

v.

ATLANTIC NATIONAL INSURANCE COMPANY and Peter H. Ros, Appellees.

No. 9086.

United States Court of Appeals Fourth Circuit.

Argued Oct. 2, 1963.

Decided March 24, 1964.

Aubrey R. Bowles, Jr., Richmond, Va. (Jack N. Herod, and Bowles, Boyd & Herod, Richmond, Va., on brief), for appellant.

Edward A. Marks, Jr., Richmond, Va. (Sands, Anderson, Marks & Clarke, Richmond, Va., on brief), for appellees.

Before SOBELOFF, Chief Judge, BOREMAN, Circuit Judge, and R. D. WATKINS, District Judge.

BOREMAN, Circuit Judge:

Which of two insurance policies affords primary coverage with respect to damages claimed to have been sustained in an automobile accident, and which of the two insurance companies involved herein is obligated to defend one Peter H. Ros, the operator of the sole automobile involved in the accident? These are the questions to be determined on this appeal. This action for declaratory judgment was brought by Insurance Company of North America, hereinafter referred to as North America, against Atlantic National Insurance Company, hereinafter referred to as Atlantic, and Peter H. Ros.

Upon a stipulation of pertinent facts the two insurance companies submitted the determination of the controversy to the District Court and that court, by a written memorandum opinion filed May 8, 1963, rendered its decision and entered judgment in favor of Atlantic, in effect declaring that the policy issued by Atlantic does not provide coverage to Peter H. Ros for the accident and that the policy issued by North America's predecessor, admittedly binding on North America, does provide such coverage, thereby requiring North America to defend and indemnify Peter H. Ros with respect to the accident. It is from this judgment that North America has appealed.

The pertinent facts are not in dispute. On June 1, 1960, one Salvador Ros rented an automobile from the Hertz Corporation in New York City, the terms of which rental were set forth in a written agreement entered into and executed at that time and place. The agreement provided that the automobile was not to be removed from the State of New York without the written consent of Hertz. Such consent was not obtained.

Having obtained possession of the automobile, Salvador Ros entrusted the use thereof to his son, Peter H. Ros, one of the defendants below, who removed the automobile from New York and, on June 2, 1960, while operating it in Virginia, was involved in the accident out of which this controversy arises and in which Robert C. Friborg, a passenger in the rented automobile, claims to have sustained injuries. Consequently, Friborg, an infant, and his father have instituted actions against Peter H. Ros in the Circuit Court of Goochland County, Virginia, for claimed medical expenses, personal injuries and resulting loss of services. Apparently there was another passenger in the rented automobile at the time of the accident who also has asserted a claim for bodily injuries.

There was in effect at the time of the accident a liability insurance policy is-

sued by Atlantic to Hertz which, under certain circumstances, covered the rented vehicle and Peter H. Ros. However, there was specifically excluded from the coverage of said policy any liability of Peter H. Ros (as a member of the immediate family of the renter) (1) with respect to bodily injury of any person riding as guest or passenger in the rented automobile; and (2) with respect to any bodily injury or property damage caused by the rented automobile while being operated in violation of any of the terms of the rental agreement.

In effect also at the time of the accident was a family automobile insurance policy, issued to Salvador Ros by North America, covering any liability of Peter H. Ros, the son of Salvador, but providing that the insurance with respect to a nonowned automobile "shall be excess insurance over any other valid and collectible insurance."

 Following the accident Atlantic, in an ostensive attempt to comply with Va.Code § 46.1–451(a) (Michie 1958),[1] filed with the Commissioner of Motor Vehicles a form entitled "Notice of Policy Under the Virginia Motor Vehicle Safety Responsibility Act," which form, commonly known and hereinafter referred to as "SR 21", purported to convey notice that the Atlantic policy was in effect at the time of the accident, that it applied to Peter H. Ros and the Hertz Corporation and was "a standard provisions automobile liability policy in form approved by the State Corporation Commission or an automobile liability policy acceptable to that Commission as substantially the equivalent of a standard provisions auto-

mobile liability policy, * * *." The parties have stipulated that the Virginia State Corporation Commission has never approved any automobile liability insurance policy for issuance in Virginia which contains exclusions with respect to liability to passengers or to liability when a vehicle is operated in violation of a rental agreement. It follows, therefore, that the Atlantic policy was neither a "standard provisions automobile liability policy" nor "substantially the equivalent" thereof. At the time the claimed liability was incurred, the automobile was being operated by Peter H. Ros in violation of the provision of the rental agreement prohibiting its removal from the State of New York without written permission; and the liability asserted, agreed by all concerned to be the only possible type of liability incurred in the accident, is with respect to bodily injury of persons riding as passengers in the rented automobile. In denying liability Atlantic relies upon these two specific exclusion clauses contained in its policy.

North America contends that Atlantic waived or is estopped to rely upon such exclusions by filing the SR 21 in which Atlantic represented that, on the date of the accident, it had in effect a policy at least substantially equivalent to a Virginia standard provisions automobile liability policy (impliedly thereby asserting that the policy contained no such exclusions as Atlantic now relies upon) and represented that such policy applied to Peter H. Ros.

 Certain provisions of the Virginia Motor Vehicle Responsibility Act (Code 1950, §§ 46.1–388 to 46.1–514) are here involved. Section 46.1–449[2] pro-

---

1. See footnote 3, infra.

2. In pertinent part, Va.Code § 46.1–449 (Michie 1958) provides:

 **"When security for damages and proof of financial responsibility required after certain accidents.**—Not less than thirty or more than ninety days after receipt by him of the report or notice of an accident which has resulted in bodily injury or death, or in damage to the property of any person to the extent of fifty dollars or more, the Commissioner shall forthwith suspend the op-

erating license and all registration certificates and plates of any person operating any motor vehicle in any manner involved in the accident unless or until the operator or chauffeur has previously furnished or immediately furnishes security, sufficient in the judgment of the Commissioner, to satisfy any judgment or judgments for damages resulting from the accident as may be recovered against the operator or chauffeur by or on behalf of any person aggrieved or his legal representative; * * *."

vides in effect that after an operator of a motor vehicle has been involved in an accident, the Commissioner of Motor Vehicles shall suspend the operator's license and registration certificate unless the operator furnishes security sufficient to satisfy any judgment which may be rendered against him. The next two sections of the Act[3] provide in effect (1) that such suspension of driving privileges shall not be imposed upon the operator of a motor vehicle registered in some state other than Virginia (such as the automobile involved in the instant case) if the owner had in effect with respect to the motor vehicle involved an automobile liability policy acceptable to the State Corporation Commission as substantially the equivalent of a Virginia "standard provisions automobile liability policy"; and (2) that upon receipt of notice of the accident, the insurance carrier involved shall determine whether or not the policy was applicable to any such liability as may have been incurred by the operator and shall thereupon file with the Motor Vehicles Commissioner a written notice respecting its determination in that regard. Form SR 21 was, of course, designed to implement the latter provision. There is, however, no indication in the statutes, here pertinent, of any legislative intent to give the filing of the required notice the effect of binding the insurance company irrevocably to the matters represented by it in such notice.

At the time the court below rendered its decision and at the time this case was argued before us, the Supreme Court of Appeals of Virginia had rendered no decision concerning the effect of the filing of an SR 21. Subsequently, on December 2, 1963, the Virginia court handed down two decisions which deal with certain phases of the question. See Virginia Farm Bureau Mutual Insurance Co. v. Saccio, 204 Va. 769, 133 S.E.2d 268; Virginia Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co., 204 Va. 783, 133 S.E.2d 277. After obtaining permission, the parties hereto filed additional briefs which present divergent views as to the interpretation of these decisions and their applicability to the issues raised in the instant case.

Counsel for North America contend that these decisions have no applicability here and provide no support for Atlantic's defensive position. In each of those cases the policy involved was a standard provisions policy in form approved in Virginia and the insurer filed the form SR 21 following an accident; thus the representations in the SR 21 forms that the policies were standard provisions policies *were true*. In the case at bar, the SR 21 representation that Atlantic's

---

3. The pertinent parts of these sections are as follows:

"§ 46.1–450. **Persons to whom § 46.1–449 not applicable.**—The provisions of § 46.1–449 shall not apply to:

"(a) An owner, operator or chauffeur if the owner had in effect, at the time of the accident, with respect to the motor vehicle involved, a standard provisions automobile liability policy in form approved by the State Corporation Commission and issued by an insurance carrier authorized to do business in this State or, if the motor vehicle was not registered in this State or was a motor vehicle which was registered elsewhere than in this State at the effective date of the policy, or at its most recent renewal, an automobile liability policy acceptable to that Commission as substantially the equivalent of a standard provisions automobile liability policy;"

\* \* \* \* \*

"§ 46.1–451. **Duty of insurance carrier, etc., after notice of accident; report of omissions by insurers to State Corporation Commission; investigation and assessment for omission.**—(a) Upon receipt of notice of the accident, the insurance carrier or surety company which issued the policy or bond shall determine whether or not the policy or bond was applicable to liability if any there was, as to the named insured and any other person using the automobile, resulting from the accident. Thereupon and not later than sixty days following receipt of notice of the accident, the insurance company or surety company shall cause to be filed with the Commissioner a written notice that the policy or bond was or was not applicable to liability if any there was, as to the named insured and any other person using the automobile, resulting from the accident."

policy was a standard provisions policy or its equivalent *was not true*. It is readily apparent that there are these factual distinctions between the Virginia cases and the case at bar. However, we think that a careful analysis of the holding in each of the Virginia decisions may be helpful.

In Virginia Farm Bureau Mutual Insurance Co. v. Saccio, supra, it was held that an insurer which had issued an automobile liability policy pursuant to Virginia's "assigned risk plan" [4] may declare the policy void *ab initio* for fraud in its procurement and that the previous filing of the SR 21 form by the insurer upon receipt of notice of the accident, and without later undertaking to withdraw such form, did not estop insurer from setting up a subsequent policy cancellation as a defense to the claim of an injured person who had obtained a judgment against the insured. There the trial court had ruled, as a matter of law, that the filing of the SR 21 form, standing alone, did effect such an estoppel. The court held that the insurer should have been permitted to present evidence to prove that the statements of the insured, in applying for the policy, were false and were material to the risk assumed.

A fair interpretation of the Saccio case indicates that the Virginia court attached no significance to the failure of the insurer to withdraw the SR 21 and the court concerned itself primarily with the legal effect of the filing of the form SR 21 and with the insurer's right to set up cancellation for fraud in the procurement of a policy issued under the "assigned risk plan" regardless of when the insurer acquired knowledge upon which it based its cancellation. After considering the

applicable Virginia statutes, the court stated: "The effect of the filing of the form [SR 21] must be determined in the light of what purpose the legislature intended the form to serve." [5] It was pointed out with emphasis that the policy there involved was not a "certified policy" [6] where, by statute, the insurer's rights of cancellation are narrowly restricted. We quote from the court's opinion the following:

"Thus, if there is a policy applicable to the liability, if any, of an operator involved in an accident, the SR-21 form serves the purpose of so advising the Division of Motor Vehicles so that such operator will not be required to furnish security or suffer the suspension of his license and registration. On the other hand, if there is a policy, but it does not afford coverage in the manner and to the extent required by Code, § 46.1–450, then the carrier, by the SR–21 form, advises the Division of Motor Vehicles that this policy is not applicable to liability, if any, and the Division is free to invoke the provisions of Code, § 46.1–449.

"We are of opinion that the legislature had no other intention with respect to the purpose to be served by the SR–21 form. *Had there been an intention to make absolute the liability of a carrier to its insured when loss or damage covered by the policy occurs and the SR–21 form is filed, the legislature would surely have so stated.*

"As has been previously noted, the legislature has clearly expressed such an intention with respect to *certified policies* issued pursuant to

---

4. The Virginia Automobile Assigned Risk Plan was devised by insurers, voluntarily and with legislative permission, to provide relief to those considered "poor risks" who desire, but are not legally compelled, to procure liability insurance and who are unable, for one reason or another, to obtain coverage through ordinary means. (133 S.E.2d 268, 273.) Under this voluntary plan the "poor risks" who desire coverage must have certain qualifications

and must not have wilfully made any incorrect or misleading statements in the prescribed application form.

5. 133 S.E.2d 268, 275.

6. A "certified policy" is issued to one who is legally compelled to procure liability insurance or furnish other proof of financial responsibility pursuant to the Virginia Motor Vehicle Safety Responsibility Act.

the Safety Responsibility Act. If, following certification of a policy issued under the Act, loss or damage covered thereby occurs, *the liability of the carrier to the insured is absolute.* Code, § 46.1–511. *But in language just as clear the legislature has said that this provision shall not apply to any policy except one so certified.* Code, § 46.1–509. *We cannot read into the statute requiring the filing of the SR–21 form the language of the statute fixing absolute liability under a certified policy."* 204 Va. 769, 133 S.E.2d 268, at 276 and 277. (Emphasis ours.)

In the Saccio case, the automobile involved was titled in the name of Edward Early Smith and driven by his son, Ronnie Gene Smith, but the liability insurance policy in question was issued to Edward Ray Smith pursuant to certain representations in the application. The insurer filed the SR 21 on behalf of the driver, stating that the policy applied to both the owner and the operator of the automobile. It is of some added significance that the court indicated that the insurer, by filing the SR 21, was not precluded from raising, in addition to the defense of cancellation for fraud in procurement, another defense based upon an exclusion provision of the policy, namely, the defense of "nonpermissive use" by the driver.

In the other of the two Virginia cases hereinabove mentioned, namely, Virginia Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co.,[7] while noting the holding of the Saccio case to the effect that the filing of the SR 21, standing alone, did not, as a matter of law, estop the insurer from relying on the defense of fraud in the procurement of the policy, the court held that, by reason of certain acts wholly inconsistent with any intention to rely upon the defense of fraud in procurement, the insurer had forfeited or waived its right to declare the policy void. In reaching such conclusion, the court relied most heavily upon a striking series of

acts by the insurer, the least important of which was the filing of the SR 21. As we interpret the case, the real holding of the court is that, under certain circumstances, the right of the insurer to declare a policy void *ab initio* by reason of fraud in procurement may be deemed to have been waived where it is conclusively shown that the insurer did not regard as material the representations or statements of the insured in his application for insurance coverage.

— From the foregoing discussion it must be apparent that we cannot, with absolute and unwavering assurance, rely upon the Saccio and State Farm Mutual cases as determinative of the case at bar. There is one point of similarity, however, which is significantly persuasive; in all three cases the insurers filed forms SR 21, each of which in substance contained a representation that the liability, if any, arising out of a motor vehicle accident was covered by an insurance policy *then in force and effect.* In each case the filing of the SR 21 operated to prevent the revocation of the operator's license. In the instant case, the representation of Atlantic in the SR 21 was incorrect in two respects: (1) The policy was not a standard provisions policy in form approved in Virginia, or the equivalent thereof; (2) by its own terms, embodied in two specific exclusion clauses, the policy did not provide coverage for the Ros accident. In Saccio, the court recognized the right of the insurer to defend against a claim of policy liability, despite its representations in the SR 21 that its policy was in force and effect and covered the driver.

In view of the holding of the Supreme Court of Appeals of Virginia with respect to the purpose to be served by the filing of form SR 21, according to legislative intendment, we conclude that Virginia would hold that Atlantic would not be here estopped from relying upon its policy exclusions despite the filing of the SR 21 and the representations therein contained. This conclusion is, of course, purely speculative and our ultimate decision is not bottomed exclusively thereon.

7. 204 Va. 783, 133 S.E.2d 277.

North America repeatedly urges that the filing by Atlantic of the SR 21 constituted an *express* waiver of the policy exclusions. Such a contention ignores the distinction between express and implied waivers. There was no language or statement in the SR 21 *expressly* indicating that Atlantic waived or intended to relinquish its right to thereafter rely upon the exclusions contained in its policy, either generally or with respect to the particular exclusions with which we are here concerned.

■■ As was pointed out by the court below, it is the general and quite well settled rule of law that the principles of estoppel and implied waiver do not operate to extend the coverage of an insurance policy after the liability has been incurred or the loss sustained. See Campbell v. Aetna Casualty & Surety Co., 211 F.2d 732, 737 (4 Cir. 1954). As was suggested by the late Judge Soper in the Campbell case, 211 F.2d at page 736, there is a definite distinction between the waiver of a right to declare a forfeiture, to cancel or to rescind based upon some breach of a condition of the policy on the one hand and the extension of the coverage provided by the policy on the other. See also annot. 113 A.L.R. 857, 858 (1938). In 29A Am.Jur., Insurance, § 1135 (1960), the law and its rationale are explained as follows:

"The rule is well established that the doctrines of implied waiver and of estoppel, based upon the conduct or action of the insurer, are not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom, and the application of the doctrines in this respect is therefore to be distinguished from the waiver of, or estoppel. to assert, grounds of forfeiture. Thus, while an insurer may be estopped by its conduct or its knowledge from insisting upon a forfeiture of a policy, the coverage, or restrictions on the coverage, cannot be extended by the doctrine of waiver or estoppel. While it is true that if the insurer,

with knowledge of facts which would bar an existing primary liability, recognizes such primary liability by treating the policy as in force, he will not thereafter be allowed to plead such facts to avoid his primary liability, the doctrine of waiver cannot be invoked to create a primary liability and bring within the coverage of the policy risks not included or contemplated by its terms."

See also annot. 113 A.L.R. 857, 858 (1938). In Conner v. Union Auto. Ins. Co., 122 Cal.App. 105, 9 P.2d 863, 865 (1932), the court, in disposing of the contention that an insurer had impliedly waived a coverage exclusion, made the following explanatory observations:

"This case does not involve the waiving of conditions which are required by the terms of the policy as a prerequisite to the establishment of liability, such as prompt notice of the accident. It involves the construction of a contract of insurance which specifically limits the liability to the use of an automobile without an attached trailer * * *. By means of the doctrine of waiver a contract may not be reformed so as to create a liability for conditions which are specifically excluded by the very terms of the instrument."

■ To this well established general rule there appears to be but one, although equally well established, exception delineated as follows:

"The general rule supported by the great weight of authority is that if a liability insurer, with knowledge of a ground of forfeiture or noncoverage under the policy, assumes and conducts the defense of an action brought against the insured, without disclaiming liability and giving notice of its reservation of rights, it is thereafter precluded in an action upon the policy from setting up such ground of forfeiture or noncoverage. In other words, the insurer's unconditional defense of an action brought against its insured constitutes a waiver of the terms of

the policy and an estoppel of the insurer to assert such grounds." 29A Am.Jur., Insurance, § 1465 (1960).

See also annot. 38 A.L.R.2d 1148 (1954). That this exception to the general rule is accepted as the law of Virginia is illustrated by Maryland Casualty Co. v. Aetna Casualty & Surety Co., 191 Va. 225, 60 S.E.2d 876 (1950), upon which North America heavily relies. See also Nationwide Mutual Insurance Company v. Gentry, 202 Va. 338, 117 S.E.2d 76 (1960); Cooper v. Employers Mutual Liability Ins. Co. of Wis., 199 Va. 908, 103 S.E.2d 210 (1958) (dictum); Fentress v. Rutledge, 140 Va. 685, 125 S.E. 668 (1924); Mayflower Insurance Company v. Osborne, 216 F.Supp. 127 (W.D. Va.1963), all dealing, however, with the waiver of a mere breach of condition (non-co-operation of the insured) rather than a question of coverage.

In Seaford v. Nationwide Mutual Insurance Company, 253 N.C. 719, 117 S.E. 2d 733, 85 A.L.R.2d 496 (1961), the court considered the effect of the filing of form SR 21 under the North Carolina Motor Vehicle Safety and Financial Responsibility Act of 1953 which is similar to the Virginia Act. There the insurance policy contained an exclusion with respect to liability of the insured arising out of the use by him in his business or occupation of a nonowned automobile. The insured was involved in a collision while so operating such an automobile, and the insurer filed with the North Carolina Department of Motor Vehicles an SR 21 reciting that its policy applied to the insured as the operator of the vehicle involved in the accident. Following the institution of an action against the insured for damages, the insurer denied its liability under the policy on the ground that the liability of the insured was expressly excluded from the coverage. After first reaching the conclusion that the liability was excluded from coverage, the court proceeds at page 737:

"Having so concluded, the next question is whether or not the filing of the SR–21 form by the insurance company, as required by G.S. § 20–279.19, waives its right to deny coverage under the terms of the policy. In other words, does the filing of an SR–21 form with the Department of Motor Vehicles prevent the defendant insurance company from subsequently raising the defense that the policy in question did not cover the plaintiff in the Maryland accident?

"The purpose of the SR–21 form, as required by G.S. § 20–279.19, seems to be a means of protecting one's driving privilege by proving insurance in the minimum amount required by this State, and was not intended to be a contract. The required filing of the SR–21 form does not show an intent on the part of the Legislature that once the insurer files the form showing that the policy is in effect, such act affects the contractual rights of the parties, or precludes the insurance company from thereafter seeking to deny its liability under the policy.

\* \* \* \* \* \*

"The better rule seems to be that by the mere filing of an SR–21 form as required by the law of this State, the insurer is not estopped to later deny coverage under the policy. \* \* \*"

From an examination of the statutes of North Carolina, it does not appear that an exclusion, such as considered by the court in Seaford, was authorized or approved for incorporation in a "motor vehicle liability policy" acceptable as proof of the financial responsibility of a nonowner operator. Nevertheless, in Seaford the filing by the insurer of the SR 21, which contained the representation that the operator was covered, did not destroy the insurer's right to subsequently rely upon the exclusion; the court concluded that the required filing of the SR 21 did not show a legislative intent that such act created a contract between the insurer and the insured or

in any way affected their contractual rights.[8]

In a case arising as a result of the filing by Shelby Mutual Plate Glass and Casualty Company of a financial responsibility insurance certificate pursuant to a similar requirement of a Vermont statute, the Court of Appeals for the Second Circuit in a well-reasoned opinion held that the filing of the certificate did not operate to extend the coverage provided by the terms of the policy, pointing out that the certificate was not insurance but only an administrative document for the convenience of the commissioner and if the commissioner had regarded the certificate as inadequate proof of the existence and terms of outstanding insurance, he could have required further proof. Farm Bureau Mut. Automobile Ins. Co. v. Violano, 123 F.2d 692 (2 Cir. 1941), cert. denied, 316 U.S. 672, 62 S.Ct. 1043, 86 L.Ed. 1747 (1942). The Shelby policy there involved had, in fact, been issued as a statutorily required policy to insure financial responsibility in the future, the insured having theretofore been involved in an accident causing property damage, and the certificate thus filed having recited that the insured was covered while driving any automobile other than his own. The insured had thereafter incurred liability for wrongful death caused by his operation of an automobile owned by a member of his household, a liability specifically excluded by the terms of the Shelby policy, contrary to the assertion of the certificate. Farm Bureau had also issued a policy cover-

8. We are not unmindful of the line of Wisconsin cases in which the effect of the filing of form SR 21 was considered. See Challoner v. Pennings, 6 Wis.2d 254, 94 N.W.2d 654 (1959); Henthorn v. M. G. C. Corp., 1 Wis.2d 180, 83 N.W.2d 759, 79 A.L.R.2d 142 (1957); Behringer v. State Farm Mutual Auto. Ins. Co., 275 Wis. 586, 82 N.W.2d 915 (1957). The theory of these Wisconsin decisions is that the extension of coverage effected is a contractual amendment which is imposed by statute as a result of the insurer's voluntary act in filing the SR 21. The first Wisconsin case to consider the effect of the filing of an SR 21 was Laughnan v. Griffiths, 271 Wis. 247, 73 N.W.2d 587 (1955), in which the court held merely that the fact of the filing is admissible in evidence as an admission on the part of the company which filed it. The decision was based upon a statute which, while prohibiting generally the admission in evidence of any of the actions taken by the commissioner under the Safety Responsibility Law, excepts from such exclusionary rule evidence of the filing of the SR 21. Although the court declined to pass on the question as to whether such filing is conclusive against the insurance company, it was held that the statute mentioned indicated a legislative intent that the filing of the SR 21 should have some effect on the contractual provisions of insurance policies. Two judges dissented on the ground that the court should not create a contract for the parties who have already voluntarily and mutually agreed upon another.

The second case to come to the attention of the Wisconsin court involving the question was Prisuda v. General Casualty Co. of America, 272 Wis. 41, 74 N.W.2d 777 (1956). The holding and effect of this decision were the same as in Laughnan v. Griffiths, supra; however, in a concurring opinion, 74 N.W.2d at p. 783, Justice Gehl graphically illustrated what he considered to be the absurdity of the rule adopted when he stated that he should call attention to the fact that the court has now made it quite clear "that it is possible for a jury as well as the court to supply the missing contract. It remains only for the trial court, when the issue is submitted to a jury, to devise the means of ascertaining by the jury's verdict what the terms of that contract are." Even the justice writing the majority opinion made it clear that he did so quite reluctantly, that he did not believe in the soundness of the rule of law therein enunciated but was simply following the precedent of Laughnan v. Griffiths, in which case he dissented.

In Challoner v. Pennings, 6 Wis.2d 254, 94 N.W.2d 654 (1959), it is indicated that the Wisconsin legislature has since amended the Safety Responsibility Law in some respect; but, since the SR 21 there involved was filed prior to the statutory amendment and the amendment was not given retroactive effect, the court does not indicate what effect the amendment may have had on the "conclusively binding" rule of the prior Henthorn and Behringer decisions.

ing the same insured which did not exclude the liability incurred. When sued by the administratrix of the accident victim upon a judgment recovered by her against the insured, Farm Bureau sought to defend, as does North America in the instant case, upon the basis of an "excess insurance" clause, claiming that the Shelby policy furnished protection by virtue, among other things, of the filing by Shelby of the financial responsibility insurance certificate. There, the court said, 123 F.2d at p. 696:

> "Let us assume, however, that a judgment creditor of the assured may hold an insurer for liability which it certifies to the Commissioner that it has assumed, though beyond the terms of its policy. Such a result could be defended on a theory that the insurer, by an erroneous statement, had induced the Commissioner to forego further proof of financial responsibility, and was, therefore, estopped from repudiating, as to the victim, a liability which would otherwise have been covered by insurance. It would be a travesty to extend a similar advantage to Farm Bureau, which was paid for covering the risk in question, since (unlike the victim) it is not within the group intended to be benefited by the law, and (unlike the Commissioner) it cannot be said to have relied upon the certificate. Certainly, by 'insurance', as used in its 'other valid and collectible insurance' clause, Farm Bureau meant something more than the liability of another insurer to a victim arising out of a misstatement in a certificate filed, after Farm Bureau issued its policy, only because of an accident which could not have been in contemplation when that policy issued. * * *"

In Hoosier Cas. Co. of Indianapolis, Ind. v. Fox, 102 F.Supp. 214 (N.D. Iowa 1952), the court considered a situation quite similar to that presented in the instant case. The Iowa statutes there pertinent seem to be substantially similar to the Virginia statutes involved here. The one important difference between the two cases is that in Hoosier the insurer's ground for denial of liability was the insured's fraud in the procurement of the policy, a circumstance giving the insurer the right to void the policy, as distinguished from a question of coverage. The insurer's defense, therefore, clearly could have been the subject of an implied waiver had the court found that the insurer, at the time of the filing of the SR 21, knew of the existence of the right. The court held, however, that not only were the elements of waiver and estoppel not present but that, furthermore, the statutes involved indicate no intention on the part of the Legislature that the filing of an SR 21 should affect private contract rights.

North America relies upon language contained in this court's opinion in Grady v. State Farm Mutual Automobile Insurance Co., 264 F.2d 519 (4 Cir. 1959), impliedly assuming, according to North America, that under certain circumstances the filing of an SR 21 in Virginia might constitute a waiver of defenses existing at the time of the accident, although holding that it could not constitute waiver of a defense arising after the accident. That case, however, dealt with a condition precedent to the liability of the insurer and not with a question of coverage.

The Virginia decision in Maryland Casualty Co. v. Aetna Casualty & Surety Co., 191 Va. 225, 60 S.E.2d 876 (1950), is heavily relied upon by North America. That decision, however, is based upon the principle hereinbefore discussed to the effect that when an insurance company assumes and conducts the defense of an action brought against the insured without disclaiming liability under the coverage provisions of the policy, it cannot thereafter be heard to say that its policy does not cover the insured. In its recital of the actions taken by the insurance company tending to indicate an intention not to deny coverage, the court there included the fact that the

insurer had filed an SR 21 but this is certainly not to say that the result reached by the Virginia court in that case was based primarily upon the filing of an SR 21.

In Fentress v. Rutledge, 140 Va. 685, 125 S.E. 668 (1924), also relied upon by North America, the filing of an SR 21 was not in any way involved; and the waiver there held to have been effected was with respect to a breach of a condition of the policy (failure on the part of the insured to deliver to the insurer copies of the process or pleadings), not related to the question of coverage. The same distinction is applicable to the decision in Woodmen of World Life Ins. Soc. v. Grant, 185 Va. 288, 38 S.E.2d 450 (1946).

The decision in Hartford Fire Ins. Co. v. Mutual Savings & Loan Co., 193 Va. 269, 68 S.E.2d 541, 31 A.L.R.2d 1191 (1952), dealt with a provision in an automobile fire insurance policy excluding coverage while the automobile was encumbered unless such encumbrance was described in the policy. In effect, the provision was treated by the court as a mere condition of the insurer's liability, the nonfulfillment of which gave rise to a right to declare a forfeiture. The court there held that the breach of the condition, or right to declare a forfeiture, was waived by the insurer by virtue of its payment of the claim. Indeed, the loss involved, the partial destruction of the automobile by fire, was a specifically covered risk.

■ Following what we believe to be the better rule, we conclude, as did the District Court, that North America cannot prevail upon either of the theories of estoppel or waiver. The lower court held that in this case there are no facts "indicating that Atlantic intended to relinquish any of its rights contained in the Hertz policy. The court cannot impute that intention to the insurance company simply because the form SR 21 was filed."

Affirmed.