# Staunton

## Maryland Casualty Company, A Corporation v. Aetna Casualty and Surety Company.

September 6, 1950.

Record No. 3680.

Present, Hudgins, C. J., and Gregory, Eggleston, Spratley, Buchanan and Miller, JJ.

The opinion states the case.

*Vandeventer & Black* and *Cadwallader J. Collins*, for the plaintiff in error.

*Williams, Cocke & Tunstall*, for the defendant in error.

HUDGINS, C. J., delivered the opinion of the court.

The Maryland Casualty Company instituted this action against the Aetna Casualty and Surety Company to recover $3,342.33, the amount it paid in satisfaction of a judgment obtained by Mary Walker against William David Perkins and the Dan River Mills, Inc. From an adverse judgment Maryland Casualty Company obtained this writ of error.

James T. Catlin & Sons, Inc., hereinafter called "Catlin," conducted an insurance agency in Danville, Virginia. It

represented both the Maryland Casualty Company, hereinafter called "Maryland," and the Aetna Casualty and Surety Company, hereinafter called "Aetna." Catlin sold two policies to Dan River Mills, one a general liability policy, issued by Aetna, the other a standard automobile liability policy, issued by Maryland. Attached to the Maryland policy was a non-ownership endorsement containing a clause that provided that it was "excess insurance over any other valid and collectible insurance available to the insured."

During the latter part of July and the first part of August, 1946, the bus drivers in Danville were on strike. Dan River Mills employed approximately 8,000 people. In order to get its employees to and from work, it offered to pay its employees who owned automobiles 6c per mile for the use of their automobiles, and for the time consumed in transporting other employees to and from work. William David Perkins, one of the employees, accepted this offer and at the time of the accident hereinafter mentioned was using his automobile for transporting employees from work.

At approximately 4:15 p. m. on August 2, 1946, Perkins, with his automobile loaded with fellow employees, obeyed the orders of a traffic policeman and started to drive from the curb. As he did so, the door of his automobile was opened and the swinging door struck and seriously injured Mary Walker, who was standing on the sidewalk on West Main Street extension in front of an alley owned by Dan River Mills. On August 8, 1946, Mary Walker, by her attorneys, Sanford & Clement, of Danville, demanded that Perkins compensate her for the injuries she sustained in the accident, and in the same letter suggested that Perkins consult Dan River Mills, as the attorneys were informed that it had a blanket liability policy which insured his automobile at the time of the accident.

Perkins took this letter to E. P. Bush, assistant secretary, and Mr. Brown, manager of transportation, of Dan River Mills. Perkins informed these parties of the nature of the accident and took one of them to the scene. On the same

day, Mr. Bush, for Dan River Mills, made a written report of the accident to Catlin. This report was received by Mr. J. R. Lowe, Chief of Maryland's claim department, at Raleigh, North Carolina. He immediately went to Danville, made, as he claims, a thorough investigation of the accident, obtained the names of witnesses from Perkins and the police officers, and ascertained the extent of Mrs. Walker's injuries. He was unsuccessful in his attempt to settle the claim without litigation. He employed the law firm of Meade & Talbott to defend the action instituted in April, 1947, by Mrs. Walker against Perkins and Dan River Mills. On May 27, the trial of the case resulted in a judgment for $3,000 against both defendants. On June 26, 1947, Maryland paid this judgment, costs and attorneys' fees, amounting to $3,342.33.

Thereafter Maryland instituted this action against Aetna on the theory that under the Aetna policy Dan River Mills was protected against any loss resulting from the accident on August 2nd, and that Maryland was liable only in the event that Dan River Mills had no other valid and collectible insurance covering such liability.

Aetna defended the action on several grounds (1) that Dan River Mills had given it no notice of the accident, had forwarded no copy of the notice of motion filed by Mrs. Walker against it, and had made no demand upon it for the Walker claim; (2) that William David Perkins, at the time of the accident, was an independent contractor and was not acting as the agent or employee of Dan River Mills; (3) that Aetna was under no contractual obligation to indemnify Perkins whose negligence was the proximate cause of the accident; and (4) that Maryland's construction of its contractual obligation extended its coverage to Perkins, and in paying the judgment Maryland was discharging a primary liability it had thus incurred.

More than nine months after the accident Maryland made its first inquiry as to other insurance, and ascertained that Aetna was liable under its policy to indemnify Dan River

Mills for any sum it was liable to pay in damages resulting from the accident. On May 15, 1947, Catlin, in obedience to Maryland's demand, gave verbal notice of the accident to the manager in charge of Aetna's Richmond office. On the next day—May 16th—Catlin gave written notice to R. S. Fry, Jr., adjuster for Aetna, in Roanoke, Virginia, and stated that Mrs. Walker had instituted an action against Perkins and Dan River Mills for $25,000. Catlin advised Fry that the case would be called for trial on May 19th, and requested Aetna to defend the action. He also said in the letter that "Frankly, Mr. Bush and I thought this accident should be reported to the Maryland Casualty Company as it involved an automobile, but it seems as if there is an overlapping of coverage and in all probability both companies should share jointly in the event of a suit. Messrs. Meade and Talbott are handling the matter as far as the Maryland Casualty Company is concerned. I would appreciate it very much if you would contact either one of them over the telephone upon receipt of this letter, if there is anything special you wish done. Of course, I have no way of knowing what any jury is going to do, however, I do not think Sanford (attorney for plaintiff) has got a strong case. I do not know whether the owner of the car, that is Willie Perkins, had any insurance or not."

A few days after receipt of this letter, Fry, as adjuster for Aetna, and Lowe, adjuster for Maryland, met in Danville and discussed, without agreeing upon, the liability of the respective companies. Maryland gave Aetna all the information it had obtained of the accident. This included statements of witnesses interviewed by Maryland and the status of the case pending. On May 24, Maryland wrote Aetna a letter in which it was stated that the action entitled "Mary Walker v. Dan River Mills, Inc. and William Perkins," pending in the Circuit Court of Pittsylvania county, had been set for trial on May 27, 1947. Maryland in the letter demanded that Aetna assume responsibility for the defense in the following language: "As indicated to

you, we carry for the Dan River Mills, Inc., an employer's non-ownership liability policy which is excess insurance over any other valid and collectible insurance available to the assured. It is the opinion of this company that the coverage for the above accident and suit is under the general liability policy carried by your company. For that reason, we must call on you to bear the expense of the defense of the above suit and to take care of any judgment within the limits of your policy."

In reply to the letter, W. R. Willey, attorney for Aetna, and J. R. Lowe, for Maryland, met in Danville, and before the trial, discussed Aetna's responsibility. Willey refused to participate in the trial, and gave the following reasons for his refusal: (1) the failure of Maryland's attorneys to file an affidavit denying ownership or control over Perkins' car; (2) the admission of Maryland that its policy covered the liability of Perkins; and (3) the failure of Dan River Mills or Maryland to notify Aetna of the accident in time to make proper investigation.

On June 25, 1947, in a letter written by Maryland, and accepted and confirmed by Aetna, the two companies agreed that Maryland should pay the judgment, costs and attorneys' fees, with the understanding "that the question of coverage shall be determined later by litigation if necessary and that the failure to appeal from the judgment rendered by the Circuit Court of Pittsylvania county and the satisfaction of said judgment shall in no way prejudice the rights of our company with respect to the question of coverage but that meanwhile the respective positions of the two companies in regard to the coverage shall be in no wise prejudiced, but on the contrary shall be preserved exactly as they were prior to this in question (satisfaction of the judgment) by the Maryland Casualty Company."

Maryland contends that this agreement eliminates all questions relating to notice and forwarding of copy of process, and confines the issue between the companies to the single

question, whether Aetna was liable for the damages, or any part thereof, resulting from the accident.

Maryland further contends that if the requirement to give notice was not eliminated by the agreement, the notice and information of the accident that Dan River Mills gave to Catlin was notice to Aetna.

Aetna contends that under the terms of its policy proper notice is a condition precedent to fixing any liability under its policy, and hence inseparable from the question of "coverage." Since Dan River Mills made no demand upon it for the claim asserted by Mary Walker, gave no notice of the accident and forwarded no process, Aetna was under no obligation to pay the judgment rendered against Dan River Mills.

These contentions of the respective companies are interesting but not vital to a determination of the case. This is a controversy, not between an assured and an insurer, but a controversy between two insurers.

The decisive question is, which, if either of the policies covered Perkins' liability to Mrs. Walker.

Aetna in its policy, with Dan River Mills, the assured, agreed to "defend in his name and behalf any suit against the Insured alleging such injury" * * * and "to pay on behalf of the Insured all sums which the Insured shall become obligated to pay by reason of the liability imposed upon him by law, or assumed by him under contract as defined herein * * *."

The verdict of the jury and the judgment of the court thereon in Mary Walker v. Dan River Mills, Inc. and William Perkins are conclusive of two facts: (1) that Perkins' negligence was the proximate cause of the injury to Mrs. Walker; and (2) that Perkins, at the time of the accident, was acting within the scope of his employment as an agent or servant of Dan River Mills.

"Where * * * under the doctrine of respondeat superior, a master becomes liable for personal injuries caused

solely by the negligent act of his servant, and is obliged to respond in damages by reason of such liability, he will be subrogated to the rights of the injured party and may recover from the servant, the one primarily liable." 50 Am. Jur., Subrogation, sec. 38, p. 707.

"A person who, without personal fault, has become subject to tort liability for the unauthorized and wrongful conduct of another, is entitled to indemnity from the other for expenditures properly made in the discharge of such liability." Restatement of the Law, Restitution, sec. 96, p. 418. See *Travelers' Ins. Co.* v. *Great Lakes Engineering Works Co.* (C.C.A. 6th), 184 F. 426.

Dan River Mills agreed in its policy with Aetna that this valuable right of restitution should be preserved for Aetna's benefit. Sub-section 9 of the policy, provides that "In the event of any payment under this Policy, the Company shall be subrogated to all the Insured's rights of recovery therefor against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights."

This right of subrogation or restitution was not preserved for the benefit of Aetna. When Dan River Mills engaged those of its employees who owned automobiles to transport other employees to and from work, it purchased from Maryland an "EMPLOYERS' NON-OWNERSHIP LIABILITY ENDORSEMENT," to be attached to the original policy. This endorsement became effective, so far as William David Perkins was concerned, on August 1, 1946. The accident occurred the next day—August 2nd.

Mr. Bush, the officer of Dan River Mills, who purchased the insurance from Maryland, testified that he gave notice of the Walker claim to Catlin, as the agent of Maryland, and discussed the matter with him. Catlin stated that both he and Mr. Bush were of opinion that the accident was covered by Maryland's policy and both of them acted accordingly.

Mr. Frank Talbott, Jr., testified that Maryland knew he was the regular attorney for Dan River ·Mills when it employed him to defend the claim asserted by Mrs. Walker. He was asked:

"Q. And didn't you feel that there was an obligation on Dan River Mills to pay any judgment gotten against Perkins if the Mills were let out?

"A. I am very clear on that point. I felt it was Dan River Mills' obligation to stand behind Perkins in that matter, and I know that I told Perkins that.

"Q. Did you discuss that phase with Mr. Lowe of the Maryland Casualty Company?

"A. I think I did."

Mr. Talbott also testified that as attorney for Maryland he did not file an affidavit denying that Dan River Mills owned or controlled the operation of Perkins' car at the time of the accident because "I was doubtful of the veracity of such an affidavit."

Section 32 of Chapter 94 of ·the Acts of 1946, pp. 128, 129, provides that within ninety days after receipt of notice of an accident which results in bodily injury or damage to property to the extent of $50.00 or more, the Commissioner of Motor Vehicles shall forthwith suspend the operator's license of any person and the registration certificate and license plates of any motor vehicle involved in the accident, until the operator, or owner has "furnished security, sufficient in the judgment of the Commissioner, to satisfy any judgment or judgments for damages resulting from the accident as may be recovered against the owner, operator, or chauffeur by or on behalf of any person aggrieved * * * ." And, in addition, the Commissioner is charged with the duty of requiring such owner or operator thereafter to "maintain proof of financial responsibility in the future." This provision, under certain circumstances not pertinent to this case, may be waived.

The Commissioner, acting under this statute, required

Perkins to furnish security for the payment of any judgment resulting from the accident on August 2, 1946. On January 5, 1947, five months after the accident, Maryland filed the form required by the Commissioner stating that its policy covered all liability incurred by William Perkins as a result of the accident in question.

Maryland now contends that its policy does not include Perkins in its coverage; that its contrary representation to the Motor Vehicle Commissioner "was a mere clerical error," and did not enlarge its coverage so as to include Perkins.

Maryland will not now be heard to say that its policy does not cover Perkins' liability to Mrs. Walker. The reasons already given for this conclusion may be summarized as follows: (1) Maryland's own representative construed its coverage to include Perkins; they acquiesced in the same construction placed upon the policy by Mr. Talbott and Dan River Mills; (2) It did not notify Dan River Mills or Perkins of its change in the construction of the policy; (3) Perkins relied upon the assurance given him that he was protected, and took no steps, independent of Maryland, to defend the claim Mrs. Walker asserted against him; (4) The Motor Vehicle Commissioner acted on Maryland's assurance that its policy covered Perkins and did not suspend his operator's license and registration certificate and registration plates of his automobile as the Commissioner would have done if such assurance had not been given him; and (5) Maryland did not inform either Dan River Mills or Perkins that it had reached the conclusion that its contractual obligation did not include protection to Perkins, and continued to defend the Mary Walker action as though Perkins was the assured under its policy. See *Big Vein Pocahontas Co.* v. *Browning*, 137 Va. 34, 61, 120 S. E. 247; *C. S. Luck & Sons* v. *Boatwright*, 157 Va. 490, 509, 162 S. E. 53.

Our conclusion is that Maryland, in paying the judgment

in question, discharged an obligation for which Perkins was primarily liable, and for which it had assumed liability.

The judgment of the trial court is

*Affirmed.*

BUCHANAN, J., concurring.

Maryland's policy insured Dan River against the Walker judgment if there was no other collectible insurance available to Dan River. Maryland's present right to recover from Aetna depends on whether at the time Maryland assumed payment of the judgment, June 25, 1947, Dan River could have collected from Aetna if Dan River had paid that judgment.

Dan River could not then have recovered from Aetna because it had not complied with the terms of its Aetna policy by giving Aetna the required notice of the Walker claim and of the institution of the Walker suit. It had not done that because it gave notice of the claim to Maryland and Maryland had accepted liability and taken charge of the suit. It thereby allowed Dan River to believe that it was protected by Maryland and left no reason for Dan River to suppose that it was necessary to take any steps to hold Aetna. Therefore, due to Maryland's course of action, Dan River had no collectible insurance in Aetna, and Maryland was obligated by the terms of its policy to pay the judgment.

While Catlin wrote both policies, and was agent for both companies, Dan River expressly dealt with him as Maryland's agent, claiming protection under Maryland's policy. Catlin acted as Maryland's agent, Maryland recognized him as its agent, made no claim that there was any mistake in what he did, and did not question its liability until too late for Dan River to hold Aetna.

Under these circumstances I think it proper to hold that

Maryland paid its own debt when it paid the Walker judgment.

SPRATLEY, J., concurs in this opinion.

EGGLESTON, J., dissenting.

At the oral argument before us the able counsel for Aetna Casualty and Surety Company frankly conceded that the obligation to defend the suit of Mary Walker against Dan River Mills, Inc., and its employee, Perkins, fell within the coverage of the Aetna policy and not within that of the Maryland policy. The opinion by the Chief Justice recognizes this premise but holds that Maryland is estopped to deny coverage for the claim. The principle of estoppel cannot, I think, be properly applied here to defeat Maryland's claim.

Succinctly stated, Maryland's case is this: It has paid a debt or obligation which Aetna was bound by law to pay, and having done so is entitled to reimbursement therefor from Aetna.

It is elementary that where one is compelled, or is in a situation to be compelled, to pay money which another is bound by law to pay, the law implies a promise by the real debtor to reimburse the payor for money thus put out for the real debtor's benefit. 40 Am. Jur., Payment, section 23, pp. 727-8. This implied obligation is the basis of one of the common counts in assumpsit. Burks Pleading and Practice, 3d Ed., p. 180.

But it is equally well settled that assumpsit will not lie to recover money voluntarily paid. Burks Pleading and Practice, 3d Ed., pp. 181, 182.

Therefore, in order for the principles invoked by Maryland to apply in the present case two things must concur:

(1) At the time of the payment of the judgment or claim by Maryland it must have been a debt or obligation of Aetna; and

(2) In making the payment Maryland must not have been a mere volunteer.

As to point (1), while Aetna admits that the claim was originally covered by its policy, and that if the claim had been properly handled it (Aetna) would have been under obligation to Dan River Mills to defend the suit, it contends that it (Aetna) did not receive proper notice of the claim from Dan River Mills, as required by the policy, and hence was relieved of liability to defend the suit and pay the judgment.

If this position is sound then at the time of the payment by Maryland the obligation had ceased to be a debt of Aetna, and Maryland has no valid claim for reimbursement. This is so because if Dan River Mills, by failing to notify Aetna of the claim, lost its rights to protection under the policy, these rights could not be revived or reinstated by the payment of the claim by Maryland.

Whether, then, at the time the debt was paid by Maryland it was really an obligation of Aetna depends upon whether Aetna, or its duly authorized agent, was properly notified of the claim.

The record shows that James T. Catlin & Sons, Inc., which wrote both policies, was the duly authorized agent to receive notices of claims on behalf of each insurance company. It is true that when Dan River Mills notified Catlin & Sons of the accident it addressed that company as agent for the Maryland Casualty Company. But Catlin & Sons was agent for both insurance companies, had written both policies, and was familiar with their terms. It was the duty of the local agent, then, to send the notice to the proper company.

Both sides agree that Catlin & Sons should have sent the notice to Aetna instead of to Maryland. In making this mistake I think Catlin & Sons was the agent of Aetna and not the agent of Dan River Mills, and that hence Aetna is estopped to say that it was not properly notified of the claim.

This being so, I reach the conclusion that at the time

Maryland undertook the defense of the suit, the claim of Mary Walker was still a debt or claim which should have been assumed and paid by Aetna.

This brings us to point (2), that is, whether in making this payment Maryland was a mere volunteer.

Whether, under the circumstances, in assuming the defense of the suit Maryland was originally a mere volunteer is an interesting question which it is not necessary to decide. Shortly after Mary Walker had recovered a judgment against Dan River Mills and Perkins, and while Maryland and Aetna, through their respective representatives, were undertaking to settle which should satisfy the judgment, the two insurance companies entered into a written stipulation whereby it was agreed that Maryland should pay the judgment, that the "question of coverage" between the insurance companies should thereafter be determined "by litigation if necessary," and that "the satisfaction of said judgment" in the meantime by Maryland should in no way prejudice the rights of either insurance company "with respect to the question of coverage."

Clearly, then, when Maryland paid the judgment pursuant to this agreement it did not do so as a mere volunteer.

As I understand it, while the opinion by the Chief Justice concedes that the Walker claim was not originally covered by the Maryland policy, it takes the position that by reason of its conduct subsequent to the accident, Maryland is estopped to deny such coverage in the present proceeding.

The acts of Maryland which the Chief Justice says constitute an estoppel are: (1) Its representatives and attorneys first construed the policy as one which indemnified Perkins, the driver of the car; (2) It did not notify Dan River Mills or Perkins of its change in the construction of the policy; (3) Perkins relied upon the assurance given him by Maryland that he was protected by the policy; (4) The Motor Vehicle Commissioner, in determining whether it should suspend Perkins' operator's license, acted upon Maryland's

assurance that its policy covered him; and (5) Maryland did not inform Dan River Mills or Perkins that it had reached the conclusion that its policy did not protect Perkins, and continued to defend the Walker action as if Perkins were the assured.

· Were this a suit by Dan River Mills or Perkins against Maryland Casualty Company, these might be sufficient reasons for holding that Maryland was estopped to deny coverage for the claim. But this is not the case. No rights of Dan River Mills or Perkins are here involved. Their rights have been fully protected and discharged upon the payment of the judgment and they have no interest whatsoever in the present litigation. The rights of Aetna in this suit are not derived from or dependent upon the rights of Dan River Mills or Perkins. Nor are we here concerned with the rights and duties of the Motor Vehicle Commissioner with respect to revoking Perkins' driver's permit.

This is a suit between two insurance companies to determine which is primarily obligated to pay this judgment. There is no showing, and indeed there is no claim, by Aetna that it relied upon or was misled to its prejudice by any of the acts of Maryland, upon which the majority opinion bases the application of the principle of estoppel against the latter company. Hence the principle of estoppel cannot be applied in favor of Aetna.

"* * * It is of the essence of estoppel that the act relied upon as such should have been injurious, and to the prejudice of him who relies upon it as an estoppel. The person claiming the estoppel must in fact act upon the conduct, acts, language or silence in such a manner as to change his position for the worse. In other words, he must so act that he would suffer a loss if he were compelled to surrender, forego or alter what he has done by reason of the first party's being permitted to repudiate his conduct, and to assert rights inconsistent with it. *The doctrine of estoppel can never be applied except where the party who invokes it shows clearly that in reliance upon the conduct or silence complained· of*

*he has been misled to his injury.* \* \* \*" (Emphasis supplied.) 7 Michie's Jurisprudence, Estoppel, sec. 31, pp. 292, 293.

It is true that Aetna contends here that its rights were prejudiced in that the Walker suit against Dan River Mills and Perkins was not properly defended by Maryland's attorneys. But there is no merit in this contention. Such a claim of prejudice is an affirmative defense and the burden was on Aetna to show prejudice. In my opinion it has not done so. It is not sufficient for Aetna merely to say that if it had defended the suit it would have done so in a different manner. It must show that it was actually prejudiced by the way in which Maryland handled the matter.

As a matter of fact, the record shows that the same reputable law firm represented both insurance companies at Danville. Everyone knows that as a practical matter these lawyers would have defended the case in the same manner, regardless of which insurance company it was representing. Certainly, there is no showing that they would have made a better job of it had they been acting for Aetna rather than Maryland.

Upon the record before us I am of opinion that Maryland is entitled to recover of Aetna the amount claimed.

MILLER, J., concurs in this dissent.