**DAIRYLAND INSURANCE COMPANY,**
Plaintiff,

v.

**Charles Robinson HUGHES, Jr., et al.,**
Defendants.

Civ. A. No. 68–C–25–L.

United States District Court,
W. D. Virginia,
at Lynchburg.

Sept. 17, 1970.

Supplemental Opinion Oct. 2, 1970.

S. J. Thompson, Jr., Lynchburg, Va., for plaintiff.

J. Frank Shepherd, Lynchburg, Va., for Charles Robinson Hughes, Jr.

W. H. Overbey, Jr., Overbey & Overbey, Rustburg, Va., for Horace W. Tucker, Administrator of Estate of Selph, etc.

William Rosenberger, Jr., Lynchburg, Va., for Peerless Insurance Co.

Norman K. Moon, Lynchburg, Va., for Allstate Insurance Co.

S. D. Roberts Moore, Roanoke, Va., for Ohio Casualty Insurance Co.

Howard W. Rhodes, Jr., Lynchburg, Va., for State Farm Mutual Automobile Insurance Co.

## OPINION

WIDENER, District Judge.

This is a declaratory judgment action brought by Dairyland Insurance Company against Charles Robinson Hughes, Jr., the Estate of Elmore Lyle Selph, Doris Selph, Lonnie Deal, Johnny G. Hamilton, Watson Samuel Wallace, State Farm Mutual Automobile Insurance Company, Allstate Insurance Company, Peerless Insurance Company, Kessler Motors Company, Inc., and The Ohio Casualty Insurance Company to determine liability insurance coverage on account of an automobile accident which occurred in Campbell County, Virginia, February 14, 1968. Hughes, Jr., was driving a 1962 Ford automobile which was involved in a collision with an automobile operated by Elmore Lyle Selph, who was killed as result of the accident. Also injured were Selph's passengers, Doris Selph, Lonnie Deal, and Johnny G. Hamilton.

Hughes, Jr., age 17 at the time of the accident, made his home with his mother in Gladys, Campbell County, Virginia.

His father, Hughes, Sr., was an employee of Kessler Motors, a Maryland corporation, the principal officer of which was Samuel Kessler. Kessler, either individually or in his corporate capacity, and Hughes, Sr., were also in the business of profitsharing, 50% to each, on the sale of some cars bought by Hughes, Sr., in the name of the corporation and sold by him. Hughes, Sr., had full authority to affix the name of the corporation to documents of title.

At the filing of this action, Wallace, Allstate, Peerless, Kessler Motors, and Ohio Casualty were not named parties. They were added later. State Farm was discharged as a party and then brought back in.

Wallace was operating another vehicle involved in the accident, and was insured by State Farm, which paid $30,000.00 on account of a judgment entered in the Circuit Court of Campbell County, which will hereafter be referred to.

The estate of Selph and Doris Selph, Lonnie Deal, and Johnny G. Hamilton commenced actions in the Circuit Court of Campbell County on account of the accident shortly after this action was filed.

At the time of the accident, Hughes, Jr., had issued in his name a policy of liability insurance, issued by Dairyland Insurance Company, which showed that he owned a 1960 Volkswagen. Mrs. Hughes, Sr., owned a 1964 Falcon, and had a policy of liability insurance issued by Peerless Insurance Company. Kessler Motors had a policy of liability insurance issued by Ohio Casualty Company. The Selph automobile was insured by Allstate Insurance Company, with standard Virginia uninsured motorist liability coverage provisions.

Dairyland, Hughes, Jr.'s insurer, denies coverage on the grounds that Hughes, Jr., was not the owner of the 1962 Ford at the time of the accident; that it was not a replacement automobile; that he had disposed of the Volkswagen and owned other intermediate automobiles not reported to the company;

that the 1962 Ford was furnished for his regular use, and that the accident arose out of the operation of an automobile sales agency.

Peerless, the insurer of Mrs. Hughes, Sr., denies coverage on the grounds that Allstate is estopped to deny coverage as against Peerless because Allstate settled the case in the state court without the knowledge or consent of Peerless; that Hughes, Jr., owned the 1962 Ford at the time of the accident; that it replaced the Volkswagen mentioned in the Dairyland policy; that it was furnished for the regular use of Hughes, Jr., with the permission of the owner; that it was used by Hughes, Jr., while engaged in the automobile business; that it was used in the occupation of Hughes, Jr.; and that Hughes, Jr., failed to cooperate, give notice to Peerless, or deliver process to it. These last defenses were not pressed at the trial and will not be further considered. No issue of fact as to cooperation, notice, or process, etc., was requested by Peerless.

Ohio Casualty, the insurer of Kessler Motors, Inc., denies coverage on the grounds that Hughes, Jr., did not give notice of the accident to Ohio Casualty as soon as practicable; that he did not forward every demand notice, summons, or other process received by him; that he did not cooperate with the company in that he voluntarily assumed obligations, all in violation of the terms of the policy. Ohio Casualty also asserts the defense of estoppel asserted by Peerless.

Allstate, the uninsured motorist carrier on the Selph automobile, of course, took the position that none of the foregoing defenses asserted by Dairyland, Peerless, and Ohio Casualty are availing to them, so that one of them must furnish coverage. It asserted by way of counterclaim that Kessler Motors owned the 1962 Ford.

State Farm, the insurer of Wallace, pleaded that it had paid $30,000.00 and had been released in the state court action.

Kessler Motors, Inc., defends on the grounds that it is merely an incidental party on account of the issuance to it of the Ohio Casualty policy. It was not a party to the actions in the state court. No relief was here asked against Kessler Motors.

Matters of fact pertaining to the denials of coverage by Dairyland and Peerless were submitted to the jury in the form of a special verdict of eleven questions. The special verdict is copied below in its entirety. The answers given in the verdict are also relevant to some extent to the inquiry concerning the coverage of Ohio Casualty and Allstate. All matters of fact not covered by the special verdict were submitted to the court for decision. The evidence on the questions submitted to the jury was in hopeless, utter confusion, and contradictory in almost every essential particular. All answers given by the jury were supported by direct evidence or by reasonable inferences therefrom, and the judgment of the court will be consistent with the answers.

SPECIAL VERDICT

Question No. 1 Did C. R. Hughes, Jr., own the 1962 Ford when the collision occurred?

No
Yes or No

Question No. 2 Did Hughes, Jr., own any other automobile between the time he sold the 1960 Volkswagen and February 10, 1968?

No
Yes or No

Question No. 3 Did Hughes, Jr., own either the 1959 Ford or the 1964 Barracuda at the time he acquired the 1962 Ford?

No
Yes or No

If the answer to question (1) is "Yes" and the answers to questions (2) and (3) are

"No", do not answer any more questions but return your verdict.

Question No. 4

Was the 1962 Ford furnished for the regular use of C. R. Hughes, Jr.?

Yes
<u>Yes or No</u>

Question No. 5

Did Kessler own the 1962 Ford at the time of the collision?

Yes
<u>Yes or No</u>

Question No. 6

Did C. R. Hughes, Sr., own the 1962 Ford at the time of the collision?

No
<u>Yes or No</u>

Question No. 7

Was the actual use of the 1962 Ford by C. R. Hughes, Jr., with the permission, express or implied, of the owner when the collision occurred?

Yes
<u>Yes or No</u>

Question No. 8

Was the actual use of the 1962 Ford reasonably believed by C. R. Hughes, Jr., to be with the permission of the owner, or the custodian, when the collision occurred?

Yes
<u>Yes or No</u>

Question No. 9

Was C. R. Hughes, Jr., using the 1962 Ford while engaged in the automobile business of his father when the collision occurred?

Yes
<u>Yes or No</u>

Question No. 10

Was C. R. Hughes, Jr., using the 1962 Ford while engaged in his occupation when the collision occurred?

No
<u>Yes or No</u>

Question No. 11

Did the collision arise out of the operation of an automobile sales agency?

Yes
<u>Yes or No</u>

February 21, 1970

"Edd F. Parsons"
<u>Foreman</u>

In accordance, then, with the jury verdict, the facts surrounding Hughes, Jr., and his possession of the 1962 Ford follow. On February 7, 1968, Hughes, Sr., purchased the 1962 Ford from Standard Pontiac for Kessler Motors. On or about February 10, 1968, he gave the vehicle to his son, Hughes, Jr., who brought the vehicle to Virginia for the purpose of attempting to re-sell same. Hughes, Jr., did not pay $300 or any other sum for the automobile on February 10, 1968, and he did not on that date execute an application for a Virginia title. Moreover, no reassignment of title was executed from Kessler to Hughes, Jr., on February 10, 1968. It was, of course, known to Hughes, Jr., that the automobile had not been purchased by him and that he was not the owner of the car.

On February 14, 1968, Hughes, Jr., was involved in an accident of rather severe proportions. He was concerned that as of the date of the accident he was using automobile license plates issued by the State of Virginia to him on a vehicle that he did not own. Therefore, Hughes, Jr., in collaboration with his father made arrangements after the accident to pre-date the documents which purported to transfer ownership of the automobile from Kessler to Hughes, Jr. It was arranged that a Bill of Sale would be executed some time after February 14, 1968, purporting to sell the vehicle to Hughes, Jr., on February 10, 1968. It was arranged some time after February

14, 1968 that a re-assignment of title to the vehicle would be made purporting to show execution on February 10, 1968.

Thereafter, Hughes, Jr., contended that he was the owner of the 1962 Ford, as evidenced by the various documents, when in fact he is bound to have known that the documents were executed after the accident and that he was not the owner of the 1962 Ford at the time of the accident.

In order to determine whether or not Ohio Casualty should afford coverage here, a too long, but abbreviated, chronological recitation of court proceedings is required.

In this court: May 31, 1968, complaint filed by Dairyland making parties the injured persons, Hughes, Jr., and State Farm; June 7, 1968, answer filed by Selph, et al; June 20, 1968, answer and counterclaim filed by Hughes, Jr.; June 21, 1968, State Farm filed motion to dismiss; June 24, 1968, State Farm dismissed as party, Allstate and Peerless made parties, guardians ad litem appointed for infants; June 25, 1968, amended complaint filed to include Peerless and State Farm; June 27, 1968, Dairyland filed answer; July 17, 1968, Allstate filed answer; July 19, 1968, Dairyland filed answer; July 19, 1968, Peerless filed answer; July 30, 1968, Hughes, Jr., filed motion for summary judgment; August 1, 1968, order entered deciding motion for summary judgment not ready for decision, etc.; October 3, 1968, notice to Dairyland to take Hughes, Jr., deposition; November 6, 1968, Hughes, Jr., deposition filed; November 13, 1968, notice and order restraining suits in Circuit Court of Campbell County until after disposition of this case; January 13, 1969, notice by Dairyland to take English, et al, depositions.

In the meantime, in the state court, at least the following actions were taken: June 5, 1968, Estate of Selph filed suit against Hughes, Jr. and Wallace, which was served on June 10, 1968; June 10, 1968, Doris Selph filed suit against Hughes, Jr. and Wallace, which was served on June 16, 1968; July 1, 1968, Deal and Hamilton sued Hughes, Jr. and Wallace, which was served July 4, 1968; June 25, 1968, Hughes, Jr., filed grounds of defense in the cases of Doris Selph and Selph's Estate, filed motion to consolidate the cases of Doris Selph and Selph's Estate, interrogatories in the case of Doris Selph, and motion for independent medical examination; July 23, 1968, Hughes, Jr., filed grounds of defense in the Hamilton and Deal cases; August 6, 1968, Hughes, Jr., filed interrogatories and motion for independent medical examination in the Hamilton and Deal cases. The actions taken by Hughes, Jr., were by Dairyland.

Ohio Casualty first learned of the accident in early February, 1969, almost a year after it happened, when its Washington, D. C., claims manager learned in a chance telephone conversation with a Dairyland adjuster that Kessler Motors might be involved in the litigation. Until that time, it had no knowledge whatsoever of any of the events which had transpired, either about the accident itself or the state and federal court litigation. Shortly thereafter, depositions were being taken of Samuel Kessler and one Carrico, an employee of Kessler Motors. Ohio Casualty sent an attorney to those depositions and received a copy of the depositions. It investigated the accident and was told by Kessler that he did not own the car involved in the accident. Kessler insisted on this fact, as did Hughes, Jr., and Hughes, Sr., down to and including the day of the trial in this court. Ohio Casualty first learned that there might be a claim that Kessler Motors owned the auto involved in the wreck in a letter from its attorney dated April 10, 1969, two days after it had been made a party to the suit.

The next series of events in the state and federal courts took place between February 1, 1969 and April 8, 1969, the day Ohio Casualty was made a party to this suit. It is to be emphasized that Ohio Casualty was not given notice of or furnished copies of any of the documents mentioned by any of the parties

who now claim Ohio Casualty should furnish coverage.

In this court: February 14, 1969, notice by Dairyland to take Kessler and Carrico depositions; February 18, 1969, notice by Peerless to take Hughes, Sr., deposition; February 18, 1969, notice by Dairyland to take Kessler and Carrico depositions; February 19, 1969, notice of filing of depositions of English, et al; February 21, 1969, notice by Dairyland to take Kessler deposition; February 24, 1969, notice by Dairyland to take Kessler deposition; February 26, 1969, notice by Peerless to take Perl deposition; March 10, 1969, notice by Dairyland to take Kessler deposition; March 10, 1969, request for admissions filed by Dairyland; March 21, 1969, Peerless filed admissions; March 31, 1969, stipulation of fact filed; April 3, 1969, notice of filing of Carrico and Kessler depositions; April 3, 1969, restraining order of November 13, 1968 vacated; April 8, 1969, notice of filing of Hughes, Sr., deposition.

In the state court, in all four pending cases, a guardian ad litem was appointed for the infant Hughes, Jr., on April 7, 1969.

Between February 1, 1969 and April 8, 1969, several depositions had been taken and filed. Notice of the taking of none of them was given to Ohio Casualty.

The next series of events occurred between April 8, 1969 and June 12, 1969.

In the state court, on April 14, 1969, Hughes, Jr., filed motion to consolidate the cases of Selph and Selph's Estate. This action was taken by Dairyland.

On June 2, 1969, a second amended complaint was filed here, the operative parts of which are that it claimed Kessler Motors, Inc., owned the 1962 Ford driven by Hughes, Jr., and that Ohio Casualty was Kessler Motors' insurer.

On June 11, 1969, *the day before Ohio Casualty was served,* the plaintiffs in the state court, Wallace, State Farm, Dairyland, Allstate, and the Travelers Insurance Company (apparently a workmen's compensation carrier) settled the case in the state court. It is to be particularly noted that neither Peerless nor Ohio Casualty nor Kessler Motors were parties to the settlement or parties to the cases in the state court. Settlement in the state court took the form of a trial by the court without the intervention of a jury, which is a common practice in Virginia, where infants and fiduciaries are involved. Judgment was entered June 24, 1969, in the state court, in the total amount of $60,000.00 against Hughes, Jr. and Wallace. State Farm paid $30,000.00 of the judgment and was released, leaving a liability of $30,000.00 against Hughes, Jr.

Other dates which are relevant are the filing in this court of the following papers:

June 19, 1969, Peerless filed answer to second amended complaint; June 20, 1969, Hughes, Jr., filed answer to second amended complaint; June 27, 1969, Allstate filed answer to second amended complaint and counterclaim against Dairyland, Ohio Casualty, and Peerless; July 10, 1969, State Farm filed answer to second amended complaint; Dairyland filed answer to Allstate counterclaim; July 10, 1969, time for Ohio Casualty and Kessler Motors to answer extended to July 11, 1969; July 11, 1969, Ohio Casualty and Kessler Motors filed answers to the complaint and Allstate's counterclaim, and Kessler's motion to dismiss filed. Numerous and various counterclaims of the parties and answers thereto had also been filed during the pendency of the action.

The jury here returned its verdict February 21, 1970. On March 13, 1970, Hughes, Jr. and Allstate filed a paper alleging Ohio Casualty was not entitled to assert its defenses because it had not notified the claimant or the claimant's attorney of its intention to rely upon its policy defenses pleaded within twenty days after discovery of a breach of terms or conditions in the policy, or of the claim, whichever be later, as required by Virginia Code, § 38.1–389.1. Ohio Casualty takes the position that

its alleged failure to comply with Virginia Code, § 38.1–389.1 is an affirmative defense and should have been pleaded in accordance with Rule 8 FRCP; that the burden was on Allstate and Hughes, Jr., to prove the statute was not complied with, which has not been done; and that the statute became effective June 27, 1968, more than four months after the accident. 1968 Virginia Acts of Assembly, Vol. 1, c. 410, p. 516. The General Assembly adjourned March 29, 1968.

All the evidence in the case was heard in open court, no depositions being read or submitted to the court and jury.

## PEERLESS COVERAGE

■ Since Hughes, Jr., did not own the 1962 Ford at the time of the collision, verdict question 1, it was a "non-owned automobile" under the terms of the policy, Part 1, Definitions, paragraph (d). This is defined by the policy to exclude vehicles "furnished for the regular use of the insured" (Hughes, Jr.). Under Part 1, Exclusions, paragraph (h) (i), the policy excludes coverage for a non-owned automobile if engaged in "the automobile business of the insured or any other person or organization." The jury's answers to questions 4, 9, and 11 effectively bar coverage by Peerless.

In addition, Peerless' defense that the settlement in the state court, agreed to by Allstate and Dairyland, but not by Peerless, worked an estoppel on Allstate, as against Peerless, to deny coverage, is well taken and will be further discussed under the liability of Ohio Casualty.

## DAIRYLAND COVERAGE

■ The Dairyland policy, Part V, Use of Other Automobiles, paragraph (c) (1), provides that the coverage does not apply to "any automobile * * * furnished for regular use to * * * the named insured," or, paragraph (c) (2), "to any accident arising out of the operation of an automobile sales agency." The jury having found that

Hughes, Jr., did not own the 1962 Ford at the time of the accident, verdict question 1, their answers to questions 4, 9, and 11 as effectively bar coverage by Dairyland as the same answers did for Peerless.

## OHIO CASUALTY COVERAGE

The accident occurred February 14, 1968. Ohio Casualty had no knowledge of any kind of either the accident or the state or federal court proceedings until the first of February, 1969. Between the time of the accident and February, 1969, at least ten pleadings had been filed in this court and more than ten in the four cases pending in the state courts; notices to take depositions were filed here, and depositions were taken and filed; and the complaint here was amended and orders were entered; all without the knowledge of Ohio Casualty. No notice, process, or other paper writing concerning any of the five pending lawsuits was ever delivered to Ohio Casualty until after the first of February, 1969. Even after Ohio Casualty had notice of the claim, in February, 1969, when it investigated, it was told that Kessler Motors did not own the car involved, and had no reason to believe otherwise unless we consider Ohio Casualty's attorney appearing at some Feb. 1969 depositions, until it received a letter from its attorney dated April 10, 1969, advising that an order had been entered making it and Kessler Motors parties to the suit. Between the time Ohio Casualty had notice of the suit and April 8, 1969, the date it was made a party, nine notices to take depositions were given in this court; a request for admissions was filed; admissions were filed; a stipulation of fact was filed; two sets of depositions were filed, and an order restraining the state court proceeding was vacated. In the state court, a guardian ad litem was appointed in all four suits. All of these just mentioned actions were taken without any notice to Ohio Casualty.

Ohio Casualty was not served with process until June 12, 1969. Between

April 8, and June 12, 1969, in this court, a second amended complaint was filed, and in the state court a motion to consolidate two of the pending cases was made. Most importantly, on June 11, 1969, the four cases in the state court were settled. Ohio Casualty received no notice of any of these actions.

The order of April 8, 1969 making Ohio Casualty a party to the suit was asked for by Allstate, but, strangely enough, Allstate did not assert its claim against Ohio Casualty at that time by way of pleading, but did nothing until June 27, 1969, when it asserted its counterclaim. Allstate thus deliberately and effectively left Dairyland as the plaintiff and in control of the procedural aspects of answering the second amended complaint. On June 27, 1969, Allstate finally asserted, by way of counterclaim, its claim against Ohio Casualty. In its answer to the second amended complaint, filed the same day, it did not mention the alleged waiver of Ohio Casualty, and the counterclaim did not mention such waiver. On July 10, 1969, with the agreement of Dairyland, Ohio Casualty was permitted until July 11, 1969 to file its answer, which was filed together with its answer to Allstate's counterclaim on July 11, 1969.

While this maneuvering in this court was proceeding, on June 24, 1969, the settlement of the four cases in the state court was effected by court order, signed by all the parties here except Peerless, Ohio Casualty, and Kessler Motors.

The record is absolutely devoid of any evidence that the Estate of Selph, Doris Selph, Deal, or Hamilton ever discussed or did not discuss anything with Ohio Casualty, notice or otherwise. For all the record shows, Ohio Casualty may have given notice to the plaintiffs in the state court and to all the parties to this action that it would rely on policy defenses. Certainly, it could not have asserted the defenses concerning settlement in the state court prior to June 11, 1969, the day the settlement was made, or, more likely, until June 24, 1969, the day it was effected by order of the state court. Because the four cases in the state court involved two infant plaintiffs, a common infant defendant, and an estate plaintiff, they would have required court approval.

Ohio Casualty's policy provides under the heading Conditions, the following:

Paragraph 4(a), "written notice containing particulars [of the occurrence] * * * shall be given * * * to the company as soon as practicable."

Paragraph 4(b), " * * * the insured shall immediately forward to the company every demand, notice, summons, or other process received by him * * * "

Paragraph 4(c), "The insured shall cooperate with the Company. * * * The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of the accident."

Virginia Code of 1950, § 38.1–381(al) requires Ohio Casualty to prove that failure to cooperate by the insured is not a policy defense unless " * * * such failure or refusal prejudices the insurer in the defense of an action for damages. * * * " Thus, the failure to cooperate must be accompanied by prejudice.

No such requirement exists for the failure of the insured to comply with the policy requirements by giving notice of the occurrence to the company and forwarding all demands, notices, summons, or other process.

■ In Virginia, it is established that a failure to give notice as soon as practicable under the terms of a policy need not be accompanied by prejudice to allow the insurer to avoid coverage. It is regarded as a condition precedent to coverage, and "as soon as practicable" means a reasonable time. What is a reasonable time is for the trier of fact under all the circumstances of the case. State Farm Mutual Automobile Ins. Co. v. Douglas, 207 Va. 265, 148 S.E.2d 775 (1966); Mason and Dixon Lines, Inc. v. United States Casualty Co., 199 Va.

221, 98 S.E.2d 702 (1957). Some opinions have stated that prejudice is implicit in the failure to give notice. State Farm Mutual Automobile Ins. Co. v. Douglas, 207 Va. 265, 269, 148 S.E.2d 775; Lumbermen's Mutual Casualty Co. v. Harleysville Mutual Casualty Co., 287 F.Supp. 932, 939, (1968) affirmed on opinion of the district court, 406 F.2d 836 (4th Cir. 1969).

■ In the instant case, the insured never has until this day given notice to Ohio Casualty of the occurrence. Ohio Casualty learned of the accident by a chance telephone call almost exactly a year later, after the present suit had been pending eight months and four suits in the state court had been pending almost as long. No excuse by Hughes, Jr., for not giving notice was given except his insistance that the auto belonged to him. The court finds as a fact, under all the circumstances of this case, that notice was not given to Ohio Casualty within a reasonable time, or "as soon as practicable," and that Hughes, Jr., failed to comply with this condition precedent to coverage. Such breach of condition bars coverage.

■ Like failure to notify the insurer, failure to forward process and like papers, need not be accompanied by prejudice in Virginia, but it must be " * * of such substantial and material nature as to justify the voiding of the insurance contract." The question of substantiality and materiality is for the trier of fact. Lack of prejudice, if it appears, is to be considered as going to the question of the materiality of the information which the insured failed to give. North River Insurance Co. of New York v. Gourdine, 205 Va. 57, 135 S.E. 2d 120 (1964).

In this case, a myriad of pleadings were filed in this court and the four cases in the state court; process was issued and served; notice was given to take depositions; depositions were taken and filed; and the case was even settled; all without a single paper being turned over to Ohio Casualty by the insured or anyone else.

■ The court finds as a fact that the failure of Hughes, Jr., to forward to Ohio Casualty "every demand, notice, summons or like process" was a material and substantial breach of a condition precedent of the policy. Such breach serves to avoid coverage. It is true that an attorney for Ohio Casualty did attend one deposition session in early 1969, but the company had not received any notice of the deposition. He was there at the instance of Ohio Casualty after its claims manager had accidentally learned of the suit to which Ohio Casualty was not a party.

■ The cooperation provisions of the Ohio Casualty policy are included under paragraph 4(c) of its Conditions. Under Virginia Code of 1950, § 38.1–381(al), a breach of this condition must be accompanied by prejudice to avoid coverage. Included is a provision that the insured "shall not except at his own cost, * * * assume any obligation."

■ On June 11, 1969, the day before Ohio Casualty was served with process, the case was settled without its knowledge or consent. The settlement was effected by order of the state court dated June 24, 1969, prior to the time for Ohio Casualty to file its responsive pleadings in this case. The June 24th order provided that a judgment for $60,000.00 be entered against Hughes, Jr., of which $30,000.00 was paid by State Farm, leaving $30,000.00 to be satisfied by Hughes, Jr. The $30,000.00 to be paid by Hughes, Jr., exactly equals the coverage of Dairyland and is the statutory requirement for the uninsured motorist coverage of Allstate. See Virginia Code of 1950, § 46.1–1(8). Dairyland, State Farm, and Allstate were the only three insurance companies included here who signed the order of June 24th. It is difficult to conceive how any more prejudicial state of facts could exist than here existed: Ohio Casualty is handed a judgment in the entry of which it had no part and is requested to pay it. Accordingly, the court finds as a fact that the settlement of the cases in the state court by Hughes, Jr., without the knowl-

edge or consent of Ohio Casualty was a prejudicial violation of the condition that the insured "shall not except at his own expense * * * assume any obligations." As such, the violation of the condition is a bar to coverage by Ohio Casualty.

Ohio Casualty asserts also, as does Peerless as mentioned above, that by agreeing to the settlement order in the state court, without their knowledge or consent, an estoppel is worked on Allstate to deny coverage as against either of them. In the opinion of the court, this defense is well taken. The order of June 24th in the state court was in fact the approval of the settlement agreement of June 11th. This has been stipulated here. There were two infant plaintiffs, an Estate plaintiff in one case, and an infant defendant in all four cases, so court approval was required. The order was signed by State Farm, Allstate, and Dairyland. Peerless and Ohio Casualty did not sign the order, and indeed the record shows Ohio Casualty had no knowledge of it at the time it was entered, and does not show that Peerless was given notice. The same conditions concerning knowledge and notice apply to the settlement agreement of June 11th.

 Allstate may not now be heard to say that liability rests not with it but with Ohio Casualty or Peerless. By its defense of the action brought in the state court, especially including its participation in the settlement of that suit, Allstate is estopped to deny coverage as to Peerless and Ohio Casualty. While it is true that the doctrine of estoppel, based upon the conduct or actions of an insurer, will generally not operate to extend coverage of a policy to involve risks not covered by its terms, there is a well established exception to this rule.

"The general rule supported by the great weight of authority is that if a liability insurer, with knowledge of a ground of forfeiture or noncoverage under the policy, assumes and conducts the defense of an action brought against the insured, without disclaiming liability and giving notice of its reservation of rights, it is thereafter precluded in an action upon the policy from setting up such ground of forfeiture or noncoverage. In other words, the insurer's unconditional defense of an action brought against its insured constitutes a waiver of the terms of the policy and an estoppel of the insurer to assert such grounds."

Insurance Company of North America v. Atlanta National Insurance Company, 329 F.2d 769, 775 (4th Cir. 1964), citing 29A Am.Jur., Insurance, § 1465 (1960); see also annot. 38 A.L.R.(2d) 1148 (1954). This rule is accepted as the law of Virginia. See Stillwell v. Iowa National Mutual Insurance Company, 205 Va. 588, 594, 139 S.E.2d 72 (1964). Its application is best illustrated here by Maryland Casualty Company v. Aetna Casualty & Surety Company, 191 Va. 225, 60 S.E.2d 876 (1950). There, two companies, through the same agent, issued insurance policies to the same insured. Aetna's was a general liability policy, while the standard auto liability policy issued by Maryland contained a clause that for non-owned vehicles it was "* * excess insurance over any other valid and collectible insurance available to the insured." 191 Va. 225, 227, 60 S.E.2d 876, 877. When insured's employee, using his own car on the business of the insured, injured a pedestrian, the accident was reported by it to the agent who had sold the policies. He, in turn, notified Maryland, who immediately undertook an investigation of the accident, and made an unsuccessful attempt to settle the claim without litigation. After the injured pedestrian instituted an action against the insured and its employee, Maryland, who had taken charge of the action, ascertained that Aetna was liable under its policy to indemnify the insured against damages resulting from the accident. Maryland thereupon caused notice of the accident to be given to Aetna, and demanded that Aetna assume responsibility for defense of the action. Aetna refused to participate in the trial, which resulted in a judgment for the

plaintiff, but the two companies agreed in a letter written by Maryland and accepted and confirmed by Aetna that Maryland should pay the judgment and, costs of defending the suit, and further that, "the question of coverage shall be determined later by litigation. * * * " 191 Va. 225, 230, 60 S.E.2d 876, 878.

In the subsequent suit brought by Maryland against Aetna to recover the amount which Maryland paid in satisfaction of the judgment, Aetna defended on the ground, among others, that Maryland was estopped to deny coverage after it had undertaken the defense of the suit and paid the judgment. Noting that the controversy was not between insured and insurer, but rather between two insurers, the court concluded that Maryland was estopped to deny coverage after it had assumed liability and had continued to defend the action against the insured as though the insured were covered under its policy.

■■■ As applied in *Maryland Casualty* and in the present case, the doctrine of estoppel serves the oft-repeated policy that " * * * a man shall not be allowed to approbate and reprobate at the same time." See Leech v. Beasley, 203 Va. 955, 962, 128 S.E.2d 293 (1962). Or, as it is stated elsewhere:

> "In Virginia, we have * * * approved the general rule that a party is forbidden to assume successive positions in the course of a suit or series of suits, in reference to the same fact or state of facts, which are inconsistent with each other, or mutually contradictory. * * * "

Burch v. Grace Street Bldg. Corp., 168 Va. 329, 340, 191 S.E. 672, 677 (1937). By participating in both the conduct of the defense and the settlement in the state court action, Allstate is bound to have represented to the state court that either it or Dairyland represented Hughes, Jr., and was liable for the damages. Thus, while Allstate could yet deny coverage as between itself and Dairyland, it could not thereafter take a position inconsistent with the settlement as to Ohio Casualty or Peerless, who were neither notified by Allstate of the settlement nor took part in it.

■■ The very least Allstate should have done was to give notice to Peerless and Ohio Casualty of both the settlement agreement and its subsequent approval by the state court. All three of these insurance companies were parties to the suit here when the settlement was made and consummated, although Ohio Casualty had not been served on June 11th, and the court is of opinion that one party to litigation has no authority to bind others without their knowledge, consent or acquiesence, or notice to them. The court realizes that the fact situation is here different from that set out in the general rule stated above, but is of opinion that the doctrine of estoppel should apply here in the same manner it was applied in *Maryland Casualty Company* where the fact situation also differed.

The last contention against Ohio Casualty is by Hughes, Jr. and Allstate. The jury verdict was returned February 21, 1970. The case was argued at length in chambers, March 5, 1970. On March 13, 1970, for the first time, Hughes, Jr. and Allstate tendered for filing under F.R.Civ.P. Rule 15(b) an answer to the answer of Ohio Casualty Company to Allstate's counterclaim which was filed July 11, 1969. This tendered pleading of Hughes, Jr. and Allstate takes the position that Ohio Casualty is estopped to assert its policy defenses because of alleged non-compliance with Virginia Code of 1950, § 38.1–389.1, which is set forth below:

> Insurer to give notice to claimant of intention to rely on certain defenses and of execution of nonwaiver of rights agreement.—Whenever any insurer on a policy of liability insurance discovers a breach of the terms or conditions of the insurance contract by the insured and such insurer intends to rely on such breach in defense of liability for any claim within the terms of such policy, such insurer shall notify the claimant or the claimant's counsel of record of its intention to rely on such defense within

twenty days after discovery by the insurer or any of its agents of the breach or of the claim, whichever is later. Whenever a nonwaiver of rights or similar agreement is executed by the insurer and the insured, notice thereof shall be given to the claimant or the claimant's counsel within ten days after such agreement is executed. Failure to serve such notice within such time will result in a waiver of such defense to the extent of such claim by operation of law. (1968, c. 410.)

 The court is of opinion that the tendered pleading should not be filed for the following reasons:

First. F.R.C.P. Rule 15(b) begins "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." I find as a matter of fact and also as a matter of law that the issue now raised of the applicability of Virginia Code of 1950, § 38.1–389.1 was not "raised by the pleadings" and also was not "tried by express or implied consent of the parties" in this action. The section was never mentioned by any party, even by inference, in any form, written or oral, until after the case was argued and the trial concluded. I find as a fact that Ohio Casualty was prejudiced in the presentation of its case by the withholding by Hughes, Jr. and Allstate of their plea of waiver under the Virginia statute until after the trial was concluded, for seven months after Ohio Casualty's defense had been asserted, and for more than eleven months after Allstate made its motion to make Ohio Casualty a party to this action.

Second. F.R.C.P. Rule 8(c) requires that "in pleading to a preceding pleading" a party shall set forth affirmatively the nineteen affirmative defenses existing under federal practice at the time the Rule was written, including waiver, and there is added "and any other matter constituting an avoidance or affirmative defense." Moore's Federal Practice, Vol. 29, p. 1842. No responsive pleading would ordinarily be required to the Ohio Casualty reply filed July 11, 1969. Under F.R.C.P. Rule 8(d), it was then taken as denied or avoided. If denied, the issues have been tried and found adversely to Hughes, Jr. and Allstate. If avoided, because their avoidance went to the entire merits of the Ohio Casualty defense, Hughes, Jr. and Allstate should have asked leave of court to file their pleading shortly after July 11, 1969, instead of shortly after the trial and arguments were over in March of 1970. In the opinion of the court, the plea of waiver under the Virginia statute tendered March 13, 1970 was an affirmative matter and should have been pleaded much earlier. In Reynolds v. Needle, 77 U.S. App.D.C. 53, 132 F.2d 161 (1942), the same result was reached in a case nearly on all fours with the one at bar.

"If he had such facts to allege he might have amended his complaint, served affidavits, or asked permission to reply. He did none of those things." 132 F.2d 161, 162.

See also Federal Practice and Procedure, Wright and Miller, Vol. 5, pp. 22–23.

 Conceding for the purpose of argument only that the tendered pleading should be filed, I find as a fact that there is no substantial evidence in the record to support the claimed fact that Ohio Casualty did not give notice of its intention to rely on policy defenses. Hughes, Jr. and Allstate rely on the testimony of Humes, the Ohio Casualty claims manager in Washington, that he talked to his attorney and no one else. Even Humes was never asked about notice. As to what all the other hundreds of Ohio Casualty employees or its attorneys may have done, the record is silent. There was no examination or cross-examination on the subject during the trial by any of the attorneys. All Hughes, Jr. and Allstate had to do at the trial was to ask the question about such notice, and this they did not do. Not one word of testimony or one scrap of paper was offered by either of them to support their contention that no no-

tice was given. In fact, all of the inferences in the case are to the contrary. All the other parties are bound to have known (it is obvious that Dairyland and Allstate, in April of 1969, were working hand-in-glove to get Ohio Casualty into the case) that Ohio Casualty had not been notified of the accident until a year after it happened; that no papers had been delivered to it; and later that no notice had been given to it of the settlement agreement or its consummation. The record fairly reeks with the inference that all of the parties were notified and knew all along that Ohio Casualty was asserting its policy defenses and that they were well taken. It is quite noteworthy that Dairyland has at no time made any issue out of the claimed waiver asserted by Hughes, Jr. and Allstate. Even if we place Allstate in the position of the plaintiff in asserting its counterclaim against Ohio Casualty, the court finds as a fact that Allstate has failed to make out even a *prima facie* case of waiver, much less prove it by a preponderance of the evidence.

The court is convinced that the defense of waiver under Virginia Code of 1950, § 38.1–389.1 is an afterthought only. It was neither properly pleaded nor proved. To allow its assertion at this late stage of the game would be highly prejudicial to the conduct of a fair trial on the merits. " * * * [I]f the record indicates that the unpleaded affirmative defense has not been tried by the 'express or implied consent' of the parties, the pleadings will not be treated as if they had raised the defense, and the court may decide not to permit the issue to be litigated," Federal Practice & Procedure, Wright and Miller, Vol. 5, p. 346.

## STATE FARM COVERAGE

State Farm paid $30,000.00 on the judgment in the state court and was there released. It will be likewise released here without further liability, as will Wallace, its insured.

## KESSLER MOTORS

No relief was here sought against Kessler Motors, and it will be released without liability. The question of whether or not Hughes, Jr., was the agent of Kessler Motors at the time of the accident was not tried here and is not decided.

## ALLSTATE COVERAGE

Hughes, Jr., was an uninsured motorist on account of the successful assertion of their respective positions by Dairyland, Peerless, and Ohio Casualty. Allstate, admittedly the carrier of uninsured motorist coverage involving the accident in question, will be required to pay the remainder of the state court judgment.

An order is this day entered consistent with this opinion.

## SUPPLEMENTAL OPINION

A final order was entered in this case September 17, 1970, and filed with the clerk September 18, 1970. On September 28, 1970, Allstate Insurance Company filed motions for a new trial, to amend the findings of fact and conclusions of law, to amend the judgment, and for a stay pending rulings on the motions, and it was called to the attention of the court that in paragraph 7 of the stipulation filed herein on February 19, 1970, the words "Allstate Insurance Company" had been interlined in ink from the typewritten stipulation.

In the opinion of the court, the only effect of such interlining is to make it appear that while Allstate may not have, on June 11, 1969, agreed to the settlement in the state court, it did agree to the settlement sometime between then and June 24, 1969, the day the final order of settlement was entered in the state court, which order was "agree[d]" to, as well as "request[ed]" by, Allstate. The findings of fact are accordingly modified as above set forth. Such alteration in the findings of fact will in no way alter the conclusions of law in the opinion of September 17, 1970.

Allstate further complains that its rights of subrogation are not fixed in the final order. The answer to this is that Allstate did not ask to have them fixed. If there is any question about subrogation, it has not been litigated here. Nothing in this case should adjudicate in any manner, or affect, any rights of subrogation Allstate may have against Hughes, Jr., or any other party to this suit. The final order will be amended to reflect that such is the case.

Allstate further complains that none of the costs were assessed against Hughes, Jr. The final order will be amended to require Allstate and Hughes, Jr., jointly and severally, to be responsible for the costs. Allstate and Hughes, Jr., as between themselves, shall share equally in the payment of costs, but each, as to the other parties to the case, shall be jointly and severally responsible for the entire sum of the taxable costs, including the fee to the guardian ad litem.

The motion for a stay is now moot, no party having sought to enforce the order of September 17, 1970, previous to the action of the court on the motions filed September 28, 1970.

The order of September 17, 1970, is this date amended consistent with this opinion.